## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 38852

ALLEN F. GRAZER, an individual,     )
    )     **Pocatello, November 2012 Term**
    **Plaintiff-Appellant,**    )
    )     **2013 Opinion No. 15**
v.    )
    )     **Filed: January 29, 2013**
GORDON A. JONES, an individual;    )
GORDON A. JONES, Personal    )     **Stephen W. Kenyon, Clerk**
Representative of THE ESTATE OF    )
LINDA G. JONES, deceased, J & J    )
LIVESTOCK, LLC, a Utah limited    )
Liability company,    )
    )
    **Defendants-Respondents.**    )

_____

Appeal from the district court of the Sixth Judicial District of the State of Idaho, Franklin County. Hon. David C. Nye, District Judge.

The decision of the district court is <u>affirmed</u>. Costs on appeal are awarded to Respondents.

Hobbs & Olson, P.C., Salt Lake City, Utah, for Appellant. Lincoln W. Hobbs argued

Racine, Olson, Nye, Budge & Bailey, Chartered, Pocatello, for Respondents. Lane V. Erickson argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

A builder sued a homebuyer in a Utah state district court for failing to pay some charges for his home's construction; the homebuyer counterclaimed, alleging that the construction was defective. Shortly before the Utah state court rendered a judgment, the homebuyer sued the builder in an Idaho state district court, seeking to void the builder's allegedly fraudulent transfer of a ranch and appurtenant water shares in Franklin County, Idaho. The homebuyer also filed and recorded the Utah judgment in Franklin County, creating a lien on all of the builder's currently owned and after-acquired real property located there. The builder reversed the transfer,

1

and therefore the ranch became subject to the lien. However, the homebuyer continued to prosecute the fraudulent-transfer action, and did not request a writ of execution.

A few months later, the builder declared bankruptcy. In a settlement agreement, the bankruptcy trustee agreed to lift the automatic stay on the homebuyer's fraudulent-transfer action, and also abandoned the ranch from the bankruptcy estate. The homebuyer's judgment lien was not discharged in the builder's bankruptcy, but apparently all *in personam* causes of action were discharged.

During the litigation in Idaho, the homebuyer filed a First Amended Complaint, which named the judgment debtor's son as a party for the first time. The homebuyer never sought to serve the son within the six-month period established by I.R.C.P. 4(a)(2). In response to the son's motion to dismiss the claims against him, the homeowner argued that filing a Second Amended Complaint triggered a new six-month period in which the son could be timely served. The district court disagreed, and dismissed the claims against the son.

The fraudulent-transfer action was repeatedly delayed, and after five years from the entry of the Utah judgment, the homebuyer's lien expired. The homeowner had never attempted to renew the judgment, and had never requested a writ of execution from the Idaho district court. The builder then moved for summary judgment, alleging that the homebuyer would be unable to obtain any relief because (1) the judgment lien had expired, and (2) any claims against the builder *in personam* were discharged in bankruptcy. The homebuyer filed a cross-motion for summary judgment, arguing that he was entitled to a writ of execution. The Idaho district court granted the builder's motion for summary judgment, denied the homebuyer's motion for summary judgment, and issued a final order from which the homebuyer timely appealed to this Court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are drawn primarily from the uncontested allegations of the plaintiff's Second Amended Complaint. Although the record contains inconsistent dates for many of the relevant events, none of these discrepancies affect the outcome.

In 1993, Gordon Jones began to build a house for Allen Grazer. Grazer refused to pay all of the money that Gordon[1] requested, so in 2002 Gordon sued Grazer in a Utah state district

---

[1] Because several individuals in this case share the last name "Jones," to avoid confusion they will be referred to by their first names.

court. Grazer counterclaimed, alleging that Gordon's construction work was defective. In December of 2004, the Utah state district court judge scheduled a trial in the case for the following April.

Shortly thereafter, Gordon and his wife, Linda Jones,[2] transferred a Franklin County, Idaho ranch (the "Ranch") that they owned to J & J Livestock, LLC ("J & J") by quitclaim deed. It appears that Gordon and Linda incorporated J & J merely to receive their property. In March of 2005, Gordon transferred the water shares appurtenant to the Ranch to Linda and their son, Jason Jones. Following a bench trial in April of 2005, the Utah district court judge stated that he intended to award a judgment in Grazer's favor.

Before the entry of judgment in the Utah state court, Grazer discovered that Gordon had conveyed property in Utah and Idaho. Grazer filed this action in May of 2005, and filed a Lis Pendens on the Ranch two days later. The original Complaint sought a declaratory judgment that the transfer of the Ranch to J & J was void *ab initio*, and in the alternative that the transfer was fraudulent. On July 7, 2005, the Utah judge then entered a nearly two-million-dollar judgment for Grazer. A few weeks later, at the request of Grazer's attorneys, Gordon and Linda caused J & J to re-convey the Ranch back to themselves in their personal capacities. That August, Jason filed a Notice of Interest, claiming a "portion" of the Ranch pursuant to an oral agreement under which he supposedly performed work on the property.

On September 23, 2005, pursuant to Idaho's Enforcement of Foreign Judgments Act ("EFJA"),[3] Grazer filed and recorded the Utah judgment in Franklin County, Idaho. This created a lien on all of Gordon's real property located in the County. I.C. §§ 10-1110, 10-1302, 10-1306A.

In April of 2006, Gordon filed for Chapter 7 bankruptcy in Utah. Grazer filed a proof of claim based on the unpaid Utah state court judgment; of all of the claims against Gordon's bankruptcy estate, Grazer's claim was by far the largest. However, the Bankruptcy Trustee believed that Grazer was an unsecured creditor because he did not obtain a final judgment from the Utah state court, and therefore his liens were invalid.[4] The Bankruptcy Trustee also calculated that the gross proceeds of the liquidation likely would be significantly less than

---

[2] Linda died in February of 2010. Thereafter, Gordon was substituted as the personal representative of Linda's estate.

[3] I.C. §§ 10-1301 to -1308.

[4] This issue is not discussed here because it was not a basis for the district court's ruling and was not briefed by the parties in this appeal.

$1,430,000. In order to avoid costly and protracted litigation regarding Grazer's status as a secured or unsecured creditor, in January of 2007 the Bankruptcy Trustee entered into a settlement agreement with Grazer, which the Utah bankruptcy court subsequently approved in an April 2007 order. Pursuant to this agreement, the Bankruptcy Trustee set aside a reserve fund to pay the administration costs of the estate and the claims of all of the other creditors; the rest of the property was abandoned from the bankruptcy estate. The automatic stay on Grazer's state-court litigation also was lifted. In January of 2009, the Utah bankruptcy court discharged Gordon's unsecured debt, but allowed for the enforcement of liens not avoided in the bankruptcy.

On July 31, 2009, Grazer filed a First Amended Complaint in the ongoing Idaho action, naming Jason as a party for the first time. On December 7, 2009, Grazer filed a Second Amended Complaint which again named Jason as a party. On February 9, 2010, a process server served Jason with a summons and the Second Amended Complaint. Jason specially appeared and moved to dismiss the claims against him due to lack of timely service; the district court granted his motion.

In February of 2011, Grazer filed a motion for summary judgment, arguing that he was entitled to a writ of execution. Gordon[5] simultaneously filed a cross-motion for summary judgment, alleging that Grazer could no longer obtain any relief in the Idaho district court. Gordon argued that Grazer's judgment lien had expired, and that Grazer could not pursue an action based on the underlying judgment as a result of Gordon's discharge in bankruptcy. Gordon further argued that Grazer had failed to timely execute on the Utah judgment. The district court agreed with Gordon, and granted summary judgment in his favor. The court held that Grazer's judgment lien expired on September 23, 2010—five years after Grazer recorded the judgment in Franklin County. The court also held that the five-year time period was not tolled by the bankruptcy proceedings, a holding that Grazer does not challenge in this appeal. The district court then entered a final judgment from which Grazer timely appealed.

### III. ISSUES ON APPEAL

A.    Did the district court properly grant summary judgment for Gordon?

B.    Did the district court properly dismiss the claims against Jason due to untimely service of process?

---

[5] The remaining defendants at this time were Gordon in his individual capacity, Gordon in his capacity as the personal representative of Linda's estate, and J & J. For brevity's sake, the other two defendants are not mentioned.

4

C.      Is Gordon entitled to attorney's fees in this appeal?

## IV. STANDARD OF REVIEW

This is an appeal from a grant of summary judgment and a grant of a motion to dismiss, both of which implicate questions of statutory interpretation. "The interpretation of a statute is a question of law over which this Court exercises free review." *New Phase Invs., LLC v. Jarvis*, 153 Idaho 207, 209, 280 P.3d 710, 712 (2012) (quoting *Gonzalez v. Thacker*, 148 Idaho 879, 881, 231 P.3d 524, 526 (2009)).

> When reviewing a grant of summary judgment, this Court applies the same standard of review used by the district court in ruling on the motion. A grant of summary judgment is warranted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The moving party bears the burden of proving the absence of an issue as to any material fact. The facts must be liberally construed in favor of the non-moving party.

*Sec. Fin. Fund, LLC v. Thomason*, 153 Idaho 343, 346, 282 P.3d 604, 607 (2012) (case citations and quotation marks omitted). Furthermore, "Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Markel Int'l Ins. Co. v. Erekson*, 153 Idaho 107, 113, 279 P.3d 93, 99 (2012) (quoting *Nampa & Meridian Irrigation Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003)).

In an appeal from a grant of a motion to dismiss for untimely service of process, this court freely reviews the district court's rulings on questions of law. *See Herrera v. Estay*, 146 Idaho 674, 678–79, 201 P.3d 647, 651–52 (2009). When reviewing a district court's determination of whether good cause existed to excuse the untimely service of process, this Court applies the summary judgment standard of review, unless the district court conducted an evidentiary hearing, in which case all reasonable inferences are drawn in favor of the district court's judgment. *See Elliott v. Verska*, 152 Idaho 280, 285, 271 P.3d 678, 683 (2012); *see also Sammis v. Magnetek, Inc.*, 130 Idaho 342, 346, 941 P.2d 314, 318 (1997).

## V. ANALYSIS

The district court properly granted Gordon's motion for summary judgment because (1) Grazer's judgment lien expired on July 7, 2010; (2) Grazer did not plead a cause of action based on the Utah judgment; and (3) Grazer's right to a writ of execution expired on July 7, 2010. Moreover, the district court properly dismissed the claims against Jason, because Grazer did not

show good cause for his failure to serve Jason within six months of filing the First Amended Complaint, which was the first pleading to name Jason as a party. Finally, in light of the frivolity of Grazer's arguments, we grant Gordon's request for attorney's fees in this appeal.

**A.** **The district court properly granted summary judgment for Gordon because the court could not have awarded Grazer any relief.**

We affirm the district court's decision because there was no genuine issue of material fact regarding whether Grazer could obtain any relief. There were three possible bases for relief: (1) execution on the judgment lien, (2) an action on the judgment from the Utah state court, and (3) execution on the Utah judgment following its domestication in Idaho pursuant to the EJFA. The judgment lien expired five years after the entry of the judgment, and none of Grazer's excuses for allowing his lien to expire are persuasive, primarily because he never attempted to renew the lien or obtain a new lien. Grazer also failed to plead a cause of action based on the Utah judgment. Finally, Grazer's right to a writ of execution on the Utah judgment has expired.

A foreign-judgment creditor holding a judgment from a sister state or federal court may domesticate that judgment in Idaho in two ways: by pursuing an action on the judgment, or by filing it in Idaho pursuant to the EFJA.

An "action on a judgment" is a common-law cause of action based on the debt represented by a judgment. *G & R Petroleum, Inc. v. Clements*, 127 Idaho 119, 122 n.4, 898 P.2d 50, 53 n.4 (1995); *Tingwall v. King Hill Irrigation Dist.*, 66 Idaho 76, 82, 155 P.2d 605, 607 (1945); *see also Corzo Trucking Corp. v. West*, 61 So. 3d 1285, 1288 (Fla. Dist. Ct. App. 2011); *Dahlin v. Kroening*, 796 N.W.2d 503, 505 (Minn. 2011). In Idaho, an action on a judgment "of any court of the United States, or of any state or territory within the United States" must be brought within six years from the date of the judgment. I.C. § 5-215. A judgment lien is distinct from the underlying judgment, and therefore the judgment does not expire merely because the lien has expired. *See Clements*, 127 Idaho at 121, 898 P.2d at 52; *Platts v. Pac. First Fed. Sav. & Loan Ass'n of Tacoma*, 62 Idaho 340, 348–49, 111 P.2d 1093, 1096 (1941) ("Expiration of the *lien* of a judgment does not extinguish the judgment. It simply terminates the statutory security." (emphasis in original)); *accord Gamles Corp. v. Gibson*, 939 A.2d 1269, 1272 (Del. 2007); *Krueger v. Tippett*, 229 P.3d 866, 871 (Wash. Ct. App. 2010). Not every action that merely mentions a foreign judgment is properly considered an action based on the foreign judgment. Although this Court has not specified all of the criteria for pleading an action based on a foreign

judgment, it is clear that a plaintiff must at least allege that the rendering court had proper jurisdiction. *Cole v. Cole*, 68 Idaho 561, 569–71, 201 P.2d 98, 103–04 (1948); *Platts v. Platts*, 37 Idaho 149, 151–53, 215 P. 464, 465 (1923); *see also Wells Fargo Bank, Nat'l Ass'n v. Kopfman*, 226 P.3d 1068, 1071 (Colo. 2010) (plaintiff pleading action on foreign judgment must assert the "existence, details, and enforceability of the foreign judgment").

The EFJA "provides an expedited procedure for the recognition and enforcement of [foreign] judgments . . . ." *Clements*, 127 Idaho at 120, 898 P.2d at 51. The option of domesticating a foreign judgment through the EFJA is cumulative with the option of pursuing an action on the judgment. I.C. § 10-1306 ("The right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under [the EFJA] remains unimpaired."); *see also Clements*, 127 Idaho at 120, 898 P.2d at 51; *Kressly v. Kressly*, 99 Idaho 348, 349, 581 P.2d 806, 807 (1978); *accord Wells Fargo Bank, Nat. Ass'n v. Kopfman*, 226 P.3d 1068, 1071 (Colo. 2010). A foreign judgment filed with a district court clerk's office in accordance with the EFJA is treated for purposes of enforcement the same as a judgment rendered by an Idaho state court. *See* I.C. § 10-1302. As such, once a foreign judgment has been domesticated by proper filing, a certified transcript or abstract thereof may be recorded in any Idaho county, I.C. § 10-1306A, thereby creating a lien on all of the debtor's real property, both presently owned and later acquired, located in the county of recordation, I.C. § 10-1110. This lien expires five years after the underlying judgment's entry. *Id.* However, the judgment lienor may file a motion to renew the judgment in "the court which entered the judgment" (i.e. the sister-state court or federal court), and then file and record the renewed judgment in Idaho. I.C. § 10-1111(1); *see also Kopfman*, 226 P.3d at 1074 (under analogous statutory scheme, foreign judgment must be renewed in rendering state before it can be re-filed in forum state). Under Idaho's renewal statute, for non-child-support judgments, the motion to renew must be made within five years of the date of the judgment, and renewal prolongs the lien for an additional five years from the date of the renewed judgment. I.C. § 10-1111(1). However, nothing in Title 10 of the Idaho Code precludes a foreign-judgment creditor from renewing the judgment pursuant to the law of the rendering state.

We now take this opportunity to correct two potentially confusing errors from our decision in *G & R Petroleum, Inc. v. Clements*, 127 Idaho 119, 898 P.2d 50 (1995). We take this unusual measure because it is likely that Grazer will continue his endeavors to satisfy his

7

judgment. Immeasurable amounts of time and judicial resources will be saved by clarifying this complex area of law, both for the litigants here, and for parties in future cases. *Clements* is overruled to the extent of any inconsistency with this opinion.

In *Clements*, a judgment creditor obtained an Oregon judgment on December 4, 1981. *Id.* at 120, 898 P.2d at 51. The judgment creditor filed the Oregon judgment in Idaho under the EFJA on August 14, 1987; renewed the judgment in Oregon on November 25, 1991; and filed the renewed Oregon judgment in Idaho under the EFJA on April 16, 1993. The judgment debtor then argued that the renewed judgment was not entitled to full faith and credit, and therefore could not properly be filed under the EFJA.

The *Clements* court noted that, under I.C. § 10-1301, "foreign judgment" is a term of art that includes only those judgments that are entitled to full faith and credit. *Id.* at 121, 898 P.2d at 52. The court went on to state that "[i]t is well-established that a forum state is not constitutionally required to recognize and enforce a sister state judgment if enforcement is sought following the expiration of the forum's statute of limitations applicable to judgments." *Id.* (citing *Watkins v. Conway*, 385 U.S. 188 (1966) (per curiam)). Therefore, the court held that, if (1) the renewed judgment "is merely an extension of the original judgment," and (2) enforcement of the renewed foreign judgment is barred by Idaho's "statutory period for enforcement," the renewed judgment can no longer be filed in Idaho under the EFJA. *Id.* According to the court, that "statutory period for enforcement" was the six-year limitations period for actions on judgments specified by I.C. § 5-215. It reasoned that "a judgment creditor holding a foreign judgment can choose between filing a formal action in Idaho on that judgment, or simply filing it under the Uniform Act," and therefore "the same period of limitations applies to either course of action." *Id.* Because the renewal in Oregon occurred more than six years after the entry of the original judgment, the court found that the judgment creditor's 1993 EFJA filing was improper. *Id.* at 52–53, 989 P.2d at 121–22.

The *Clements* court's first error was its offhand comment that "I.C. § 10–1111 provides that a judgment lien may be renewed within five years after the judgment is *recorded*." *Id.* at 121 n.2, 898 P.2d at 52 n.2 (emphasis added). This is not the correct date from which to measure the five-year period of a judgment lien's life. Idaho Code section 10-1111 incorporates the time period specified in section 10-1110. Under both the current version of I.C. § 10-1110 and the version in effect at the time *Clements* was decided, a non-child-support judgment lien "continues

five (5) years from the date of the *judgment*." I.C. § 10-1110 (emphasis added). In turn, the judgment may be renewed pursuant to I.C. § 10-1111[6] within five years from the date of the judgment—i.e. the entry of the judgment in the sister state or federal court. Under the *Clements* court's incorrect interpretation, the lien, and the right to renew it under our law, expired on August 14, 1992—five years after the date the judgment was recorded.[7] Under the correct interpretation, the lien, and the right to renew it under our law, expired on December 4, 1986— five years after the date the judgment was entered in Oregon. The 1987 EFJA filing could not have created a lien at all, because more than five years had passed since the unrenewed judgment that it was based on was entered.

The *Clements* court's second error was holding that the six-year statute of limitations from I.C. § 5-215 affects the time in which a foreign judgment may be filed pursuant to the EFJA. We recognize that there is a split in authority on this issue: some states apply their respective statutes of limitations for actions on judgments to EFJA filings, while other states take the opposite view. *See Potomac Leasing Co. v. Dasco Tech. Corp.*, 10 P.3d 972, 974 (Utah 2000) (collecting cases). States following the former approach reason that it results in greater uniformity between the two methods for domesticating foreign judgments, *see id.*; and the *Clements* court appears to have been motivated by the same concern, *see* 127 Idaho at 121, 898 P.2d at 52.

We decline to do violence to the plain language of I.C. § 5-215 in the name of uniformity. Unlike courts in some other states, we are not at liberty to depart from the plain meaning of a statute for policy reasons. *See Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 896, 265 P.3d 502, 509 (2011). *See generally* John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2388 (2003).

As explained earlier, I.C. § 5-215 applies only to "[a]n *action* upon a judgment." An action on a judgment requires the judgment creditor to file a completely new case. An EFJA filing does not involve initiating a new case. An action on a judgment results in a completely new Idaho judgment in favor of the judgment creditor. In contrast, under the EFJA the foreign judgment is merely "*treat[ed]* . . . in the same manner" as an Idaho judgment by the clerk of the

---

[6] As discussed below, the judgment may also be renewed outside of that five-year period if the rendering state permits such a renewal, and then the renewed judgment may be filed and recorded anew in Idaho, giving rise to a new lien.

[7] Similarly, both Gordon and the district court erroneously measured the five years from the date that Grazer filed his Notice of Filing Foreign Judgment.

9

court in which it is filed, and is "subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as [an Idaho judgment,] and may be enforced or satisfied in like manner [as an Idaho judgment]." I.C. § 10-1302 (emphasis added). No new Idaho judgment is created by an EFJA filing.

We therefore side with those jurisdictions holding that statutes of limitations for actions on judgments do not limit the time in which a judgment creditor may file under the EFJA. *See Hunter Tech., Inc. v. Scott*, 701 P.2d 645, 646 (Colo. App. 1985); *Deuth v. Ratigan*, 590 N.W.2d 366, 373 (Neb. 1999); *Hill v. Value Recovery Grp., L.P.*, 964 P.2d 1256, 1259 (Wyo. 1998). If the Legislature wishes to limit the time for EFJA filings, it may do so. But, it is not our province to ignore the relevant statues as presently written.

Moreover, even in those states that do apply their statutes of limitations for actions on judgments to EFJA filings, the limitations period begins to run "from the date the judgment is entered *or last renewed* in the rendering state." *See Potomac Leasing Co. v. Dasco Tech. Corp.*, 10 P.3d 972, 975 (Utah 2000). In *Clements*, the Oregon judgment was renewed in 1991, and the judgment creditor attempted to file the renewed judgment in 1993. Less than six years had passed between these two dates. Therefore, even if I.C. § 5-215 had applied, it would not have barred the new EFJA filing.

We are aware that our Court of Appeals has remarked that it "view[s] I.C. § 10-1111 to be in the nature of a statute of limitation; it sets the time limit for a judgment creditor to take action to renew the judgment." *Smith v. Smith*, 131 Idaho 800, 802, 964 P.2d 667, 669 (Ct. App. 1998). Idaho Code section 10-1111's five-year period for renewal, however, does not affect whether full faith and credit should be granted to a judgment that was properly renewed in a sister state pursuant to its law and then filed in Idaho more than five years after the judgment was originally entered.

As noted above, the *Clements* court relied on *Watkins v. Conway*, 385 U.S. 188 (1966) (per curiam). In *Watkins*, the United States Supreme Court held that Georgia was not required to allow the owner of a Florida judgment to pursue an action on the judgment more than five years after it was rendered, where a Georgia statute of limitations specifically barred actions on foreign judgments after five years. The Court explained that the Georgia statute of limitations "bars suits on foreign judgments only if the plaintiff cannot revive his judgment in the State where it was originally obtained." *Id.* at 189. The judgment creditor remained free, under the statute, to

10

renew his judgment under Florida law and then pursue an action on the renewed judgment in Georgia. Thus, according to the Court "full faith and credit is insured, rather than denied, the law of the judgment State." *Id.* at 191.

The statute of limitations at issue in *Watkins* indisputably was intended to bar lawsuits such as that brought by the owner of the Florida judgment. In contrast, nothing in I.C. § 10-1111 suggests that our Legislature intended it as the exclusive procedure for renewing a foreign judgment that later might be filed in this state pursuant to the EFJA. Moreover, other courts have held that *Watkins* requires that full faith and credit be extended to judgments renewed under the rendering state's law. *See Durham v. Ark. Dep't of Human Servs./Child Support Enforcement Unit*, 912 S.W.2d 412, 414 (Ark. 1995); *Jensen v. Fhima*, 731 N.W.2d 876, 880–81 (Minn. Ct. App. 2007); *Yorkshire W. Capital, Inc. v. Rodman*, 149 P.3d 1088, 1092–93 (Okla. Civ. App. 2006). Thus, *Clements* should have held that the renewed Oregon judgment was entitled to full faith and credit.

If Grazer is able to renew his Utah judgment, the *Clements* decision should not prevent him from filing the renewed judgment in Idaho pursuant to the EFJA, although he cannot obtain a lien or execution on that renewed judgment more than five years after that renewal. We need not express any view on whether, if Grazer does file a renewal motion in Utah, the Utah court might find it untimely or prohibited by Gordon's discharge in bankruptcy. Similarly, if Grazer is able to obtain a new judgment following an action on his original judgment in Utah, he could file the new judgment in Idaho pursuant to the EFJA. Again, we express no view on whether a Utah court might permit Gordon to pursue such an action on his judgment.

Because Grazer has not yet, and might never, renew his Utah judgment in Utah; and because he has not yet, and might never, successfully pursue an action on the judgment; and because he has not yet, and might never, file and record any such renewed or new judgment in Idaho, there was no basis for the district court to grant Grazer any relief. Therefore, we affirm the district court's grant of summary judgment.

1. *Grazer cannot obtain any relief based on his expired judgment lien.*

Grazer's judgment lien expired on July 7, 2010, five years after the entry of the Utah judgment on July 7, 2005. It is undisputed that Grazer never attempted to renew his lien. Nevertheless, Grazer asks this Court to disregard the fact that his lien has expired. We shall not do so.

Grazer argues that his diligent litigation in the district court tolled the five-year expiration period for his judgment lien. Even assuming that diligence could toll the statute—a proposition that Grazer does not support with any authority—the record plainly shows that Grazer was not diligent in any activity that could have extended his lien or created a new one. The fact that Grazer diligently litigated an action to set aside allegedly fraudulent transfers and to partition a property does not show any diligence in litigating a motion to renew a judgment or in pursuing an action on a judgment.

Grazer also contends that Gordon's "unclean hands" estop him from asserting that Grazer's judgment lien has expired. Grazer's argument is based on the fact that Gordon's Answer pled several defenses asserting that Grazer could not properly execute against Gordon's property. It is also based on the fact that the trial date in the Idaho district court was delayed by several withdrawals and continuances.[8] Again, this argument misses the mark. Gordon's litigation strategy might have interfered with any attempt by Grazer to execute on his judgment lien[9] or to pursue his fraudulent transfer and partition action, but Grazer never explains how any of Gordon's actions interfered with Grazer's ability to renew his judgment or file an action based on the judgment.

Moreover, Grazer admits that Gordon's counsel's "conduct in this case is not particularly reprehensible." In order to give rise to the equitable defense of unclean hands, a litigant's conduct must be "inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue." *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 370, 179 P.3d 323, 333 (2008) (quoting *Gilbert v. Nampa Sch. Dist. No. 131*, 104 Idaho 137, 145, 657 P.2d 1, 9 (1983)). The conduct must be intentional or willful, rather than merely negligent. *Retail Developers of Ala., LLC v. E. Gadsden Golf Club, Inc.*, 985 So. 2d 924, 932 (Ala. 2007); *DeCecco v. Beach*, 381 A.2d 543, 546 (Conn. 1977); *Farmington Woods Homeowners Ass'n v. Wolf*, 817 N.W.2d 758, 767 (Neb. 2012); 27A Am. Jur. 2d *Equity* § 100; 30A C.J.S. *Equity* § 113. There is no evidence that Gordon intentionally did anything to mislead Grazer into believing that he would not assert the five-year time limit in I.C. §§ 10-1110 and 10-1111. Therefore, estoppel and unclean hands have no application here. Finally, "[e]quity aids the diligent and not the negligent." *Mueller v. Bohannon*, 589 N.W.2d 852, 861 (Neb. 1999); *accord*

---

[8] Many of the delays at issue occurred after the lien expired, and therefore are patently irrelevant.
[9] Even this is doubtful, because Grazer admits that he "never specifically requested that [the Idaho district court] issue an execution" before five years elapsed.

*In re Estate of Bovey*, 244 P.3d 716, 721, (Mont. 2010); *McIntire v. Lang*, 254 P.3d 745, 750 (Or. Ct. App. 2011); *In re Sw. Bell Tel. Co., L.P.*, 226 S.W.3d 400, 404 (Tex. 2007); *Jacobson v. Jacobson*, 557 P.2d 156, 158–59 (Utah 1976); *Dorsett v. Moore*, 61 P.3d 1221, 1224 (Wyo. 2003); *cf. Winn v. Campbell*, 145 Idaho 727, 733, 184 P.3d 852, 858 (2008) (party asserting equitable estoppel must have exercised reasonable diligence). As discussed above, Grazer was not diligent, and therefore equity will not come to his aid.

Next, Grazer asks this Court to hold that the purpose of I.C. § 10-1111's five-year expiration period is to protect the judgment lienor from other creditors who might assert an interest in the debtor's property. Therefore, according to Grazer, "it would be an absurdity for the absence of [a] specific request to allow the Judgment debtor to escape the liability imposed by the lien." Idaho Code section 10-1111(1) does not allow for sua sponte renewal. Moreover, only the Utah court that entered the judgment can renew it. Finally, in order to obtain a lien based on the renewed judgment, it must be re-filed and re-recorded. We are not at liberty to ignore these requirements, and neither is Grazer.

### 2. *Grazer did not plead an action on the Utah judgment.*

Gordon contends that a foreign-judgment creditor may either proceed under the EFJA or pursue an action based on the foreign judgment, but not both. Because Grazer filed his Utah judgment under the EFJA, Gordon contends that he could not later file an action on that judgment. While it would be inequitable to allow a judgment creditor to obtain multiple satisfactions of the same underlying judgment, there is no basis for preventing a foreign-judgment creditor from pursuing parallel methods of satisfying his entire judgment. A judgment filed under the EFJA creates a lien on only real property. If a judgment debtor has insufficient real property to pay the entire judgment, it may be necessary to reach the debtor's other property. Therefore, we decline Gordon's invitation to force a judgment creditor to elect between filing a foreign judgment under the EFJA and pursuing an action based on the foreign judgment.

Nonetheless, Grazer never stated a claim based on the Utah judgment. Notably, the Second Amended Complaint never alleges that the Utah district court had proper jurisdiction, which this Court has twice held is necessary to state a claim based on a foreign judgment. *Cole v. Cole*, 68 Idaho 561, 569–71, 201 P.2d 98, 103–04 (1948); *Platts v. Platts*, 37 Idaho 149, 151–

13

53, 215 P. 464, 465 (1923). At this point, over six years have passed since the Utah judgment was entered, and therefore any action based on that judgment is now time-barred. I.C. § 5-215.

### 3.    *Grazer's right to a writ of execution has expired.*

Grazer asserts that "this Court can and should reverse the denial of Plaintiff's [Motion for] Summary Judgment, mandating a Writ of Execution on the property forthwith." This is plainly incorrect, as the denial of a motion for summary judgment is not an appealable order, absent an exception such as that specified in I.A.R. 12(a). *Miller v. Idaho State Patrol*, 150 Idaho 856, 863, 252 P.3d 1274, 1281 (2011). Nonetheless, the issue of whether Grazer is no longer entitled to a writ of execution is relevant to the extent that it bears on the propriety of the grant of summary judgment in Gordon's favor. *See Lewiston Indep. Sch. Dist. No. 1 v. City of Lewiston*, 151 Idaho 800, 808, 264 P.3d 907, 915 (2011).

If Grazer could have obtained a writ of execution below despite the expiration of his lien and his failure to plead a cause of action based on the Utah judgment, then we would be obliged to remand the case for further proceedings. But, Grazer is no longer entitled to a writ of execution. A judgment creditor may request a court to issue a writ of execution "at any time within five (5) years after the entry" of the judgment. I.C. § 11-101. There is one exception to this five-year limit: "In all cases *other than for the recovery of money* the judgment may be enforced or carried into execution after the lapse of five (5) years from the date of its entry, by leave of the court, upon motion, or by judgment for that purpose, founded upon supplemental pleadings." I.C. § 11-105 (emphasis added). According to Grazer, his action is not for the recovery of money, and therefore the I.C. § 11-105 exception to the time limitation in I.C. § 11-101 applies. This argument fails because this is an action "for the recovery of money" to the extent that Grazer sought to have Grazer's property sold to satisfy his Utah money judgment. More than five years have passed since Grazer's judgment was entered, and therefore he is no longer entitled to a writ of execution.

**B.    The district court properly dismissed the claims against Jason due to insufficient service of process because Grazer neither served Jason within six months of filing the First Amended Complaint, which named Jason as a party for the first time, nor showed good cause for failing to do so.**

A plaintiff must serve a defendant within six months of filing a complaint, unless the plaintiff is able to show good cause for the lack of timely service. I.R.C.P. 4(a)(2). Where a

14

defendant is named for the first time in an amended complaint, the plaintiff must serve that defendant within six months of filing the first complaint to name the defendant. *See Elliott v. Verska*, 152 Idaho 280, 287, 271 P.3d 678, 685 (2012); *Sammis v. Magnetek, Inc.*, 130 Idaho 342, 346, 941 P.2d 314, 318 (1997).

Here, Jason was named for the first time in the First Amended Complaint, which was filed on July 31, 2009. He was not served until February 9, 2010, outside of the six-month period. Grazer's argument that the Second Amended Complaint triggered a new six-month period in which he could serve Jason is obviously erroneous under *Elliott* and *Sammis*.

Grazer also contends that the district court erred in holding that he failed to show good cause for his failure to timely serve Jason. Good cause implies the existence of factors outside a plaintiff's control, as opposed to the plaintiff's lack of diligence. *See Elliott*, 152 Idaho at 290, 271 P.3d at 688. Here, Grazer concedes that he made no attempt to serve Jason with the First Amended Complaint.

Nonetheless, Grazer attempts to excuse this failure by arguing that "no one had placed any reliance upon or filed any pleadings in response to [the First Amended] Complaint . . . ." This argument is a non sequitur. The reliance or lack thereof of anyone besides Jason cannot possibly be relevant to whether Jason was timely served. Moreover, it would be surprising if Jason *did* rely on, or file a responsive pleading to, a complaint that was not yet served on him. His failure to preemptively file an unnecessary response hardly justifies Grazer's failure to effect timely service.

Without any supporting authority, Grazer also argues that Jason had "constructive notice" of the First Amended Complaint, because he was represented by the same law firm as Gordon, which law firm received a copy of the First Amended Complaint. This Court has held that "a defendant's prior knowledge of the claim does not constitute a waiver of the mandatory requirement that the plaintiff [timely] serve the summons and complaint . . . ." *Rudd v. Merritt*, 138 Idaho 526, 533, 66 P.3d 230, 237 (2003); *see also Telford v. Mart Produce, Inc.*, 130 Idaho 932, 935, 950 P.2d 1271, 1274 (1998). Indeed, even mailing a defendant a copy of a summons and complaint is not an acceptable substitute for using an authorized process server, and will not give rise to good cause so as to extend the deadline for service. *See Campbell v. Reagan*, 144 Idaho 254, 257, 159 P.3d 891, 894 (2007). If *actual* notice does not excuse untimely service, it is difficult to see how a heretofore unrecognized form of *constructive* notice could do so.

Because Grazer did not timely serve Jason, and because no circumstances outside of his control prevented him from doing so, the district court properly dismissed Grazer's claims against Jason.

**C.    Gordon is entitled to attorney's fees in this appeal as all of Grazer's arguments are frivolous.**

Grazer does not request any attorney's fees in this appeal. Gordon, however, requests a fee award pursuant to I.C. § 12-121 and I.R.C.P. 54(e)(1) on the grounds that Grazer's arguments in this appeal are frivolous. As discussed above, none of Grazer's arguments are persuasive, and many of them are unsupported by any authority, are utterly implausible, or are clearly contrary to prior decisions rendered by this Court. Therefore, we grant Gordon his attorney's fees in this appeal.

## VI. CONCLUSION

We affirm the district court's grant of summary judgment to Gordon. Grazer's judgment lien has expired, he did not plead a cause of action based on the Utah judgment, and he did not timely request a writ of execution. Moreover, Jason was not timely served. Because Grazer's arguments in this appeal are frivolous, we award Gordon attorney's fees and costs on appeal.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.

16