**WELLS FARGO BANK, NATIONAL ASSOCIATION, by assignee, Ann W. Kopfman, Petitioners**

v.

**William Lynn KOPFMAN and Christine E. Kopfman, Respondents.**

No. 08SC783.

Supreme Court of Colorado, En Banc.

March 15, 2010.

Brown, Berardini & Dunning, P.C., Douglas W. Brown, David C. Walker, Denver, Colorado, James M. Croshal, Pueblo, Colorado, Attorneys for Petitioners.

Lester, Sigmond, Rooney & Schwiesow, P.C., James K. Lester, Alamosa, Colorado, Sherman & Howard, L.L.C., Mark Fulford, Stephen A. Hess, Denver, Colorado, Attorneys for Respondents.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

The present case requires this court to determine the proper procedure for judgment creditors to follow when seeking to extend judgment liens predicated on judgments originally issued by foreign courts and later domesticated in Colorado. The Uniform Enforcement of Foreign Judgments Act, sections 13–53–101 to –107, C.R.S. (2009), ("Uniform Act") allows parties to domesticate judgments issued by foreign courts. Once a foreign judgment is domesticated under the Uniform Act, it is enforceable through the Colorado judicial process. As with other judgments, a judgment creditor who has domesticated a foreign judgment may obtain a judgment lien on property of the judgment debtor located in Colorado by filing a transcript of the judgment record in the county where the debtor's property is located. § 13–52–102(1), C.R.S. (2009). Judgment liens expire after six years "unless, prior to the expiration of the original six-year period" the judgment is "revived as provided by law and a transcript of the judgment record of such revived judgment ... is recorded in the same county in which the transcript of the original judgment was recorded...." *Id.* We conclude that, under section 13–52–102(1), in order to extend a judgment lien predicated upon a foreign judgment domesticated in Colorado, judgment creditors must revive the underlying foreign judgment in the jurisdiction that originally issued the judgment. Then, the judgment creditor must revive the domesticated foreign judgment in Colorado by complying with the requirements of C.R.C.P. 54(h), and filing a transcript of the revived judgment record in the county where the original transcript of judgment was recorded.

## II. Facts and Procedural History

The present dispute centers on the ownership of a fourteen-acre parcel of property located in a Rio Grande County golf course. Respondents William Lynn Kopfman and Christine E. Kopfman (together "Kopfman Respondents") own an undivided one-half interest in the parcel. Petitioner Ann W. Kopfman and the estate of Bill Kopfman, Ann's now-deceased husband, own the other undivided one-half interest in the tract.

On January 20, 1999, Wells Fargo Bank, National Association ("Wells Fargo") secured a judgment for nearly seven million dollars against ENKO Produce, LLC, Michael and Rhonda Entz, and the Kopfman Respondents in the Superior Court of Maricopa County, Arizona. On February 24, 1999, Wells Fargo filed a petition in the Saguache County District Court seeking registration of the Arizona judgment under the Uniform Act. Along with the petition for registration of the Arizona judgment, Wells Fargo filed an "affidavit of filing of foreign judgment" and a "notice of registration of foreign judgment" pursuant to section 13–53–104(1) and (2). On March 17, 1999, the Saguache County District Court entered an order recognizing and registering the Arizona judgment. Two months later, pursuant to section 13–52–102(1), Wells Fargo recorded a transcript of the judgment record issued by the Saguache County District Court in the Rio Grande County real property records, thereby establishing a judgment lien against any real property owned by the judgment debtors in Rio Grande County.

Later that year, the Kopfman Respondents filed a Chapter 7 bankruptcy in the District

of Colorado and their debts were discharged in late 1999. The parties agree that this bankruptcy prevents personal recovery against the Kopfman Respondents on the Wells Fargo debt but did not discharge the judgment lien on their interest in the Rio Grande County property.

On January 8, 2004, one year before the Colorado judgment lien was to expire, Wells Fargo filed a "judgment renewal affidavit" in the Maricopa County Superior Court in Arizona. This filing renewed the Arizona judgment for another five-year period. Ariz.Rev. Stat. §§ 12–1612, –1613 (2009). Wells Fargo then recorded a certified copy of the "judgment renewal affidavit" in the Rio Grande County clerk and recorder's office on January 24, 2004.[1]

In October of 2006, Petitioner Ann Kopfman purchased the Wells Fargo debt from Wells Fargo for roughly $160,000. Shortly after purchasing the debt, Ann Kopfman filed a motion for writ of execution against on the golf course property, seeking a sheriff's sale of the Kopfman Respondents' interest in the golf course property. The trial court granted the motion; however, one week prior to the sale date, the Kopfman Respondents filed a motion to quash the sale. Relying on section 13–52–102(1), the Kopfman Respondents argued that Wells Fargo failed to properly extend the judgment against them when it filed the Arizona "judgment renewal affidavit" with the Rio Grande County clerk and recorder. Section 13–52–102(1) provides, in part:

The lien of such judgment shall expire six years after the entry of judgment unless, prior to the expiration of such six-year period, such judgment is revived as provided by law and a transcript of the judgment record of such revived judgment, certified by the clerk of the court in which such revived judgment was entered, is recorded in the same county in which the transcript

of the original judgment was recorded, in which event the lien shall continue for six years from the entry of the revived judgment.

The Kopfman Respondents argued that the underlying judgment was not "revived as provided by law" because Wells Fargo failed to revive the domesticated foreign judgment in accordance with C.R.C.P. 54(h) and file a transcript of the revived judgment record with the Rio Grande County clerk and recorder. Additionally, the Kopfman Respondents asserted that the Arizona "judgment renewal affidavit" did not meet section 13–52–102(1)'s revival requirements because it was not a transcript of the judgment record and was not certified by the Saguache County District Court clerk. Accordingly, Respondents argued that the judgment lien expired on June 21, 2005, six years after the transcript of the domesticated judgment record was originally filed with the Rio Grande County clerk and recorder.

The district court ruled that the 1999 judgment lien was properly extended when Petitioners properly revived the Arizona judgment and filed the Arizona "judgment renewal affidavit" in the clerk and recorder's office. Applying the substantial compliance doctrine, the trial court concluded that the Arizona "judgment renewal affidavit" was the equivalent of a Colorado transcript of judgment record. Therefore, the trial court ruled that the 1999 judgment lien was properly extended and could be used to execute on the Kopfman Respondents' interest in the golf course property.

The court of appeals reversed the trial court, holding that a judgment creditor seeking to extend a judgment lien beyond the six-year expiration period must follow Colorado procedures by reviving the judgment under Colorado law and then filing a transcript of the revived judgment record. 205 P.3d 437

1. On February 28, 2005, Wells Fargo obtained a new transcript of judgment record from the Saguache County District Court which they then filed in the office of the Rio Grande County clerk and recorder. However, this transcript of judgment record listed only ENKO Produce, LLC as the judgment debtor and did not mention either the Kopfman Respondents or Michael and Rhonda Entz. The record is unclear as to whether

Petitioners obtained the new transcript of judgment as a result of reviving the originally domesticated Arizona judgment or through some other means. However, because the transcript of judgment references the original 1999 case domesticating the Arizona judgment, it appears that the court issued the new transcript of judgment record after reviving the original 1999 domesticated judgment.

(Colo.App.2008). We granted certiorari[2] and now affirm the judgment of the court of appeals. We hold that, once a foreign judgment has been domesticated in Colorado pursuant to the Uniform Act, in order to extend a judgment lien predicated upon the domesticated foreign judgment, creditors must revive the domesticated judgment pursuant to C.R.C.P. 54(h) and then file a transcript of the revived judgment record in the real property records where the original judgment lien was filed.

## III. Analysis

### A. Domestication of Foreign Judgments

Under the Full Faith and Credit Clause of the United States Constitution, Colorado courts have always enforced judgments rendered in foreign jurisdictions subject to our courts' satisfaction that the judgments were duly rendered. However, before the enactment of the Uniform Act in 1969, the only method available to foreign judgment creditors seeking to enforce foreign judgments in Colorado was to commence a civil action by filing a complaint in a Colorado court asserting the existence, details, and enforceability of the foreign judgment. *Hunter Technology, Inc. v. Scott,* 701 P.2d 645 (Colo.App. 1985). The civil action was then subject to the same procedural requirements as all civil actions in the state of Colorado. *Id.* However, in 1969, Colorado promulgated the Uniform Act in order to streamline the process by which foreign judgments could be enforced in Colorado. *Griggs v. Gibson,* 754 P.2d 783, 784 (Colo.App.1988).

The Uniform Act does not supplant the common law means of enforcing foreign judgments through the initiation of a civil action. A judgment creditor may still enforce a foreign judgment in Colorado by initiating a civil action in this state and requesting the court to enter the foreign judgment in Colorado. § 13–53–107. However, the Uniform Act provides an alternative, simplified method for domesticating foreign judgments in Colorado. Under the Uniform Act, a judgment creditor can file a properly authenticated foreign judgment with the "office of the clerk of any court of this state which would have had jurisdiction over the original action had it been commenced in this state." § 13–53–103. Once the foreign judgment has been properly filed, a transcript of judgment record issues and the judgment "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the court of this state in which filed and may be enforced or satisfied in like manner." *Id.*

### B. Judgment Liens

In order to obtain a judgment lien on property located in Colorado, a creditor in possession of a valid judgment "obtained in any court of record in this state ... or a foreign judgment [ ] filed with the clerk of any court of this state in accordance with the provisions of the 'Uniform Enforcement of Foreign Judgments Act' " files a "transcript of the judgment record, certified by the clerk of such court" in any county in which the property is located. § 13–52–102(1). After the transcript of judgment record is filed with the county clerk and recorder, the judgment becomes "a lien upon all the real estate ... in the county where such transcript of judgment is recorded, owned by such judgment debtor or which such judgment debtor may afterwards acquire in such county." *Id.*

■ While judgments in Colorado last for twenty years, judgment liens expire six years after entry of judgment. *Id.;* C.R.C.P. 54. In the case of judgment liens based on foreign judgments domesticated in Colorado under the Uniform Act, the six-year period begins to run from the date the foreign court entered the original judgment. *Baum v.*

---

**2.** We granted certiorari on the following issues:
1. Whether the court of appeals erred in holding that a judgment creditor who has domesticated a foreign judgment and established a judgment lien on Colorado real property under section 13–52–102, C.R.S. (2008), must revive that judgment in the foreign court, redomesticate that judgment, and record a new transcript of judgment issued by a Colorado court.
2. Whether the court of appeals erred in adopting a strict compliance standard for Colorado's judgment lien and recording statutes and should have instead adopted a substantial compliance standard.

*Baum,* 820 P.2d 1122, 1123 (Colo.App.1991). However, judgment liens can be extended if, "prior to the expiration of [the original six-year period], such judgment is revived as provided by law and a transcript of the judgment record of such revived judgment, certified by the clerk of the court in which such revived judgment was entered, is recorded in the same county in which the transcript of the original judgment was recorded." § 13–52–102(1).

### C. The Present Dispute

 At issue in the present case is the meaning of section 13–52–102(1)'s language stating that judgment liens can be extended if the underlying "judgment is revived as provided by law...." Statutory interpretation is a question of law subject to de novo review. *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006). A reviewing court begins the analysis with the plain language of the statute. If the statute is clear and unambiguous on its face, then the court need look no further. *People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002).

Petitioners argue that, in the context of foreign judgments domesticated in Colorado, reviving a judgment "as provided by law" requires a judgment creditor to revive the underlying judgment in the foreign court that originally issued the judgment and then file evidence of that revival with the clerk and recorder in the county where the judgment lien was originally filed. Therefore, Petitioners argue that they complied with section 13–52–102(1)'s judgment lien extension requirements when they revived the underlying judgment in the Maricopa County Superior Court in Arizona and filed the "judgment renewal affidavit" with the Rio Grande County clerk and recorder.

The Kopfman Respondents disagree, and argue that the court of appeals was correct in holding that, in order to extend a judgment lien predicated upon a domesticated out-of-state judgment, the judgment creditor must first revive the domesticated judgment pursuant to C.R.C.P. 54(h) and then, pursuant to section 13–52–102(1), file a transcript of the judgment record of the revived judgment in the same county in which the transcript of the original judgment record was recorded. Therefore, they argue that Petitioners failed to properly extend the judgment lien because they did not revive the domesticated judgment pursuant to C.R.C.P. 54(h) or file a transcript of the revived judgment with the Rio Grande County clerk and recorder. Respondents also dispute Petitioners' assertion that filing the Arizona "judgment renewal affidavit" complied with section 13–52–102(1)'s requirement that judgment creditors file a "transcript of the judgment record of such revived judgment, certified by the clerk of the court in which such revived judgment was entered," with the county clerk and recorder in the county where the original judgment was recorded.

We agree with the Kopfman Respondents and hold that, in order to extend a judgment lien predicated upon a domesticated foreign judgment, a judgment creditor must revive the domesticated judgment pursuant to C.R.C.P. 54(h) and then file a transcript of the revived judgment record, certified by the clerk of the Colorado court where the judgment was domesticated, in the clerk and recorder's office where the original judgment lien was recorded. Therefore, we conclude that section 13–52–102(1)'s statement that, in order to extend a judgment lien, the judgment must be revived "as provided by law" is a reference to C.R.C.P. 54(h) and does not, in the context of domesticated judgments, refer to reviving the judgment in the foreign jurisdiction. Consistent with this holding, we find that section 13–52–102(1)'s statement that a judgment creditor must file a "transcript of the judgment record of such revived judgment, certified by the clerk of the court in which such revived judgment was entered," cannot be satisfied by filing some evidence of revival of the foreign judgment. To allow parties to extend judgment liens in such a manner would be contrary to the plain language of the statute and inject uncertainty into Colorado real property records.

### 1. The Plain Meaning of Section 13–52–102(1) When Read in Light of the Uniform Act and C.R.C.P. 54(h)

 C.R.C.P. 54(h) provides the procedures with which judgment creditors must

comply in order to revive judgments. It states that, to revive a judgment, a judgment creditor must file a motion alleging the date of the original judgment and the amount of the original judgment that remains unsatisfied. *Id.* The debtor then has ten days to show cause why the judgment should not be revived. *Id.* If the debtor answers, any issues are to be resolved by the trial court. *Id.* A revived judgment "must be entered within twenty years after the entry of the judgment which it revives, and may be enforced and made a lien in the same manner and for like period as the original judgment." *Id.* If a judgment is revived before the expiration of a judgment lien created by the original judgment, "the filing of the transcript of the entry of revivor in the register of actions with the clerk and recorder of the appropriate county before the expiration of such lien shall continue that lien for the same period from the entry of the revived judgment as is provided for original judgments." *Id.*

By its terms, the Uniform Act applies Colorado judgment procedures to foreign judgments filed in the state. Section 13–53–103 states that a foreign judgment filed in Colorado "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment" of a Colorado court, and "may be enforced or satisfied in like manner." As pertinent to the present case, foreign judgments domesticated in Colorado are (1) subject to the same "procedures" as judgments originating from Colorado courts; and (2) subject to the same "proceedings … for reopening" as judgments of Colorado courts.

■ *Black's Law Dictionary* defines the word "procedure" expansively to mean "a specific method or course of action" and "the judicial rule or manner for carrying on a civil lawsuit or a criminal prosecution." *Black's Law Dictionary* 1221 (7th ed. 1999). Generally, a court's procedures define the parameters of the proceedings and the "manner and means by which" parties must comply in order to prosecute or defend against a suit. *See Guaranty Trust Co. of N.Y. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Accordingly, a literal reading of sec-

tion 13–53–103's statement that judgments domesticated under the Uniform Act are subject to the same "procedures" as judgments originally entered by Colorado courts suggests that all rules related to the "manner and means" by which courts of this state conduct proceedings related to the entry of judgments apply to judgments domesticated under the Uniform Act.

The provision of section 13–53–103 stating that judgments domesticated in Colorado are "subject to the same proceedings … for reopening" as judgments originating from Colorado courts is yet more specific to the issue of revival. *Black's Law Dictionary* defines the word "revive" to mean "restoration to current use or operation; especially the act of restoring the validity or legal force of a … dormant judgment." *Black's Law Dictionary* 1321 (7th ed.1999). *Black's Law Dictionary* does not define the term "reopen"; however, *New Webster's Dictionary* defines the term to mean "to open again" and "to revive." *New Webster's Dictionary* 844 (1st ed. 1992). Courts have used the terms synonymously. *See, e.g., O'Neill v. Simpson,* 958 P.2d 1121 (Colo.1998); *Tietsworth v. Harley–Davidson, Inc.,* 303 Wis.2d 94, 735 N.W.2d 418 (2007).

Under section 13–52–102(1), in order to extend a judgment lien, creditors must "revive the judgment as provided by law." C.R.C.P. 54(h) provides the procedures for reviving a judgment. Therefore, in order to extend a judgment lien predicated upon a judgment originally issued by a Colorado court, creditors must revive the judgment under C.R.C.P. 54(h) and then comply with the lien extension requirements of section 13–52–102(1).

Because a foreign judgment domesticated in Colorado is subject to the same "proceedings for … reopening" as a judgment originating from a Colorado court, in order to extend a judgment lien predicated upon a domesticated foreign judgment, the creditor must comply with the same revival requirements as he would had the judgment originated from a Colorado court. Therefore, in the context of foreign judgments domesticated in Colorado, section 13–52–102(1)'s requirement that the underlying judgment

must be revived "as provided by law" means the same thing as it does in the context of judgments originating from Colorado courts.

However, one additional step must be performed that is not required for judgment liens predicated on judgments originating from Colorado courts—the original foreign judgment must be revived in the jurisdiction that originally issued the judgment. In *Baum v. Baum*, 820 P.2d at 1123, the court of appeals held that, in the context of domesticated foreign judgments, the six-year judgment lien period begins to run from the date the foreign court issued the original judgment.[3] Therefore, although neither section 13–52–102(1) nor any provision of the Uniform Act specifically requires revival of the foreign judgment in the foreign jurisdiction, because of *Baum's* holding that the timing of the judgment lien period is based on the underlying foreign judgment, a creditor seeking to revive a Colorado judgment lien predicated upon a foreign judgment domesticated in Colorado must first revive the underlying foreign judgment in the foreign jurisdiction.

Consequently, in order to revive a foreign judgment domesticated in Colorado "as provided by law," the foreign judgment must first be revived in the jurisdiction that originally issued the judgment. Then, the domesticated foreign judgment must be revived in Colorado pursuant to C.R.C.P. 54(h). Once the foreign judgment is so revived, the creditor must comply with the remainder of section 13–52–102(1) by filing a transcript of the judgment record "of such revived judgment" in the "same county in which the transcript of the original judgment was recorded."

In sum, when section 13–53–103 is read in light of section 13–52–102 and C.R.C.P. 54(h), the plain language of the statute requires that a creditor seeking to extend a judgment lien based upon a domesticated foreign judgment must comply with C.R.C.P. 54(h) by reviving the domesticated foreign judgment in Colorado and then filing a transcript of the revived judgment record in the same county where lien was originally filed.

### 2. The Bearing of *Baum v. Baum* on the Present Dispute

Petitioners argue that, under *Baum v. Baum*, 820 P.2d 1122, foreign judgments domesticated in Colorado are not "judgments" of Colorado courts within the meaning of section 13–52–102. Relying on *Baum's* holding, Petitioners argue that the filing of the foreign judgment in Colorado is simply recognition by Colorado courts of the foreign judgment. Therefore, Petitioners state that, under the Uniform Act, only one judgment exists—that is, the only "judgment" is the foreign judgment which has been recognized by the courts of this state. Consequently, Petitioners conclude that section 13–52–102's reference to the "judgment" is a reference to the underlying foreign judgment, not the domesticated Colorado court judgment.

However, as discussed above, this assertion is belied by the plain language of the Uniform Act. Additionally, Petitioners misconstrue the import of *Baum's* statement that the six-year judgment lien period begins to run from the date of entry of the foreign judgment. The simple fact that the six-year judgment lien period runs from the date of entry of the foreign judgment does not mean that creditors are not required to revive the domesticated judgment in Colorado courts in order extend a judgment lien predicated upon the domesticated judgment. Instead, *Baum's* holding was a reflection of the policy concern that allowing foreign judgment holders' judgment liens to accrue from the date the judgment was domesticated in Colorado would allow such judgment creditors to "create a longer judgment lien on a foreign judgment than on a judgment originally entered in Colorado." *Id.* Accordingly, the *Baum* court was concerned with ensuring that foreign judgment holders would not gain procedural advantages unavailable to domestic judgment holders.

This concern underscores the purpose of the Uniform Act, which is to simplify and standardize the enforcement of foreign judgments domesticated in Colorado. Rather

---

**3.** This court adopted *Baum's* holding in *Mortgage Investments Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1186 (Colo.2003).

than standardizing judgment enforcement procedures in Colorado, Petitioners' reading of section 13–52–102(1) would result in different procedures being applied to revival of judgments and judgment liens depending upon whether the judgment originated from a Colorado court or was domesticated in Colorado courts pursuant to the Uniform Act. Consequently, under Petitioners' reading of section 13–52–102(1), the phrase "revived as provided by law" would have two different meanings. In the context of a creditor seeking to extend a lien predicated upon a judgment originating from a Colorado court, it would refer to C.R.C.P. 54(h). However, in the context of a creditor seeking to extend a lien predicated upon a foreign judgment domesticated in Colorado, it would refer to revival in the jurisdiction that originally issued the judgment. Such a result could not have been intended by the General Assembly when it stated that a judgment domesticated under the Uniform Act has "the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment" of a Colorado court. *See* § 13–53–103.

### 3. Section 13–52–102(1)'s Transcript of Judgment Record Requirement

Petitioners argue that, in the context of foreign judgments domesticated in Colorado, section 13–52–102(1)'s requirement that, to revive a judgment lien, the judgment creditor must file a "transcript of judgment record" should be read to mean that, once the underlying foreign judgment is revived, some evidence of the revived foreign judgment must be filed in the county clerk and recorders' office. Arizona does not issue "transcripts of judgment records"; instead, it recognizes "judgment renewal affidavits" as evidence of revived judgments. Consequently, Petitioners argue that, under their reading of the statute, they could not file a transcript of judgment record, but instead filed its Arizona equivalent—an endorsed "judgment renewal affidavit." Accordingly, Petitioners assert that they complied with section 13–52–102(1) by filing a document that evidenced the renewal of the Arizona judgment.

We reject Petitioners' interpretation of section 13–52–102(1)'s transcript of judgment record requirement. C.R.C.P. 79(d) requires the clerk of every court to keep a "judgment record" of all judgments entered by the court. When parties seek evidence of the judgment entered by the court, they obtain transcripts of the judgment record maintained by the clerk of court. Therefore, a "judgment record" is a specific record used by courts of this state to track all judgments entered by the court—including new judgments, revived judgments, and foreign judgments domesticated under the Uniform Act.

If the General Assembly intended judgment creditors seeking to extend judgment liens predicated upon domesticated foreign judgments to revive the foreign judgment and then file some evidence of the revived foreign judgment, it would not have employed language in section 13–52–102(1) requiring the judgment creditor to file a document issued by *Colorado* courts. If such a result was intended, the General Assembly could easily have selected language to effectuate this purpose. Instead, section 13–52–102(1), which specifically references judgments obtained "in accordance with the provisions of the 'Uniform Enforcement of Foreign Judgments Act,' " states that, to extend a judgment lien, the judgment creditor must file a "transcript of the judgment record of such revived judgment." Therefore, not only is Petitioners' argument that the Arizona "judgment renewal affidavit" satisfied the transcript of judgment record requirement belied by the plain language of section 13–52–102(1), that section's reference to a document issued by Colorado courts suggests that section 13–52–102(1) cannot be read as urged by Petitioners. Instead, section 13–52–102(1)'s reference to a "transcript of judgment record" suggests that, in order to extend a judgment lien, judgment creditors must revive the judgment in Colorado in order to obtain a "transcript of the judgment record," and then file that document in office of the county clerk and recorder.

### 4. Substantial Compliance

■ Petitioners argue that, even if section 13–52–102(1) requires judgment creditors to

revive foreign judgments in Colorado pursuant to C.R.C.P. 54(h), this court should reverse the court of appeals and hold that Petitioners substantially complied with section 13–52–102 for judgment lien extension purposes. We decline to do so. Petitioners' failure to revive the domesticated foreign judgment as required by C.R.C.P. 54(h) and file a Colorado transcript of judgment record was not merely a failure to follow the form required by Colorado statutory law. Rather, it constituted a wholesale failure to comply with substantial requirements of the law. As discussed above, section 13–52–102(1) requires judgment creditors seeking to extend judgment liens predicated upon domesticated foreign judgments to revive their judgments in Colorado pursuant to C.R.C.P. 54(h). Important considerations related to consistency of real property records and regularity of procedure support such a requirement.

The substantial compliance standard urged by Petitioners would result in uncertainty in the real property records. Under section 13–52–102(1), the world is provided notice of a judgment lien when a transcript of judgment record is filed in the real property records of the county where the debtors' property is located. Therefore, the filing of a transcript of judgment record is an act recognized by law as establishing a lien on property and alerting the public at large to the fact that a lien exists on the subject property. Requiring all judgment creditors to file the same document provides continuity and—while some independent investigation may need to be undertaken to establish the validity of the judgment—parties who discover such a document while searching the records of a given piece of property immediately know that a judgment lien exists. Were we to adopt the substantial compliance standard as urged by Petitioners, parties could file any manner of document issued by a foreign jurisdiction in place of the uniformly accepted transcript of judgment record. Under such a scheme, as pointed out by the court of appeals, those searching Colorado real property records would have to be familiar with the legal nuances and effect of varying procedures in all fifty states. While the Arizona judgment renewal affidavit provided much of the same, if not more, information than

would have been contained in a Colorado transcript of judgment record, it did not provide the notice required by section 13–52–102(1)—that is, that a judgment enforceable in Colorado exists and encumbers the property. Accordingly, we decline to extend the substantial compliance standard urged by Petitioners to section 13–52–102(1)'s lien extension requirements.

### IV. Conclusion

Accordingly, we affirm the court of appeals and hold that, to extend a judgment lien predicated upon a domesticated foreign judgment, the creditor must first revive the domesticated judgment pursuant to C.R.C.P. 54(h) and then file a transcript of the revived judgment record in the same county in which the original judgment lien was filed.

Justice HOBBS does not participate.