2015 COA 3

**INDEPENDENT BANK, a Michigan bank, Plaintiff–Appellee,**

v.

**Joseph T. PANDY, Trustee, a/k/a Joseph Pandy Jr.; Elizabeth Pandy, Trustee, a/k/a Elizabeth A. Pandy; Joseph Pandy Jr. & Elizabeth Pandy Living Trust, a/k/a Joseph Pandy Jr. and Elizabeth A. Pandy Living Trust Dated Nov. 10, 2003, Defendants–Appellants.**

Court of Appeals No. 14CA1733

Colorado Court of Appeals,
Div. A.

Announced January 15, 2015
Rehearing Denied April 2, 2015

Grand County District Court No. 14CV30031, Honorable Mary C. Hoak, Judge.

The Law Firm of John A. Lobus, P.C., John A. Lobus, Lakewood, Colorado, for Plaintiff–Appellee.

The Whitmer Law Firm, LLC, Kent Whitmer, William Berry, Hot Sulphur Springs, Colorado, for Defendants–Appellants.

Opinion by JUDGE TAUBMAN

¶ 1 Joseph T. Pandy, Elizabeth Pandy, and the Joseph Pandy Jr. & Elizabeth Pandy Living Trust (collectively the Pandys) peti-tion under C.A.R. 4.2 for interlocutory review of the district court's order denying their C.R.C.P. 12(c) motion for judgment on the pleadings. We grant the petition, affirm the district court's order, and remand for further proceedings.

## I. Background

¶ 2 In August 2010, plaintiff, Independent Bank, a Michigan banking corporation (the Bank), obtained two judgments against Joseph Pandy in the amounts of $923,356.14 and $34,954.12 in a Michigan state court. In April 2012, the Bank domesticated the Michigan judgment in the district court in Grand County, Colorado. It then filed transcripts of the domesticated judgments with the Grand County Clerk and Recorder in January 2013 to obtain a judgment lien against Joseph Pandy's real property in the county, including the C Lazy U Homesteads.

At that time, the Joseph Pandy Jr. & Elizabeth Pandy Living Trust (the Trust) held title to the C Lazy U Homesteads, which the Bank learned when it deposed Joseph Pandy in April 2013.

¶ 3 In March 2014, the Bank filed a "Complaint for Quiet Title and Decree of Foreclosure" against the Pandys. The complaint sought a decree that the judgment lien against Joseph Pandy individually was valid against his interest in the Trust. It also sought an order directing the sheriff to sell Joseph Pandy's interest in the trust property to satisfy the domesticated judgment against him.

¶ 4 The Pandys filed a C.R.C.P. 12(c) motion for judgment on the pleadings, asserting that the complaint was barred by the three-year statute of limitations in section 13–80–101(1)(k), C.R.S.2014. In a written order, the district court concluded that the three-year statute of limitations in section 13–80–101(1)(k) was inapplicable to the Bank's complaint. Specifically, the court ruled that because the Bank's complaint was an attempt to collect on a domesticated judgment, and not an action to obtain a new judgment, the statute of limitations in section 13–80–101(1)(k) did not apply. Rather, it determined that under section 13–52–102(1),

C.R.S.2014, the Bank had six years from the date of the Michigan judgment to enforce its judgment lien on Joseph Pandy's property.

¶ 5 The court denied the motion to dismiss, and the Pandys filed a C.A.R. 4.2 petition for interlocutory appeal.

## II. C.A.R. 4.2

¶ 6 The Pandys contend that their petition for interlocutory appeal satisfies the requirements of C.A.R. 4.2. We agree.

### A. Applicable Law

¶ 7 C.A.R. 4.2 provides:

(a) Discretionary Interlocutory Appeals. Upon certification by the trial court, or stipulation of all parties, the court of appeals may, in its discretion, allow an interlocutory appeal of an order in a civil action....

(b) Grounds for Granting Interlocutory Appeal. Grounds for certifying and allowing an interlocutory appeal are:

(1) Where immediate review may promote a more orderly disposition or establish a final disposition of the litigation; and

(2) The order involves a controlling and unresolved question of law. For purposes of this rule, an "unresolved question of law" is a question that has not been resolved by the Colorado Supreme Court or determined in a published decision of the Colorado Court of Appeals, or a question of federal law that has not been resolved by the United States Supreme Court.

¶ 8 Therefore, we may grant an interlocutory appeal when (1) immediate review may promote a more orderly disposition or establish a final disposition of the litigation; (2) the order from which an appeal is sought involves a controlling question of law; and (3) the order from which an appeal is sought involves an unresolved question of law. *Wahrman v. Golden W. Realty, Inc.*, 313 P.3d 687, 688 (Colo. App. 2011); *Tomar Dev., Inc. v. Bent Tree, LLC*, 264 P.3d 651, 653 (Colo. App. 2011).

¶ 9 No division of this court has developed a single definition of "controlling" for the purposes of a C.A.R. 4.2 petition. Instead, whether an issue is "controlling" depends on the nature and circumstances of the order being appealed. *Adams v. Corr. Corp. of Am.*, 264 P.3d 640, 645 n.8 (Colo. App. 2011). In making this determination, divisions of this court have considered various factors, including—as relevant here—whether the issues are potentially case-dispositive. *See Kowalchik v. Brohl*, 2012 COA 25, ¶ 13, 277 P.3d 885, 888.

### B. Analysis

¶ 10 Here, if the statute of limitations in section 13–80–101(1)(k) bars the Bank's complaint, the litigation would be resolved without the need for a trial. Therefore, the issue presented here is case-dispositive and immediate review could establish a final disposition of the litigation.

¶ 11 For the same reason, we conclude that the issue is "controlling." *See Triple Crown at Observatory Vill. Ass'n, Inc. v. Vill. Homes of Colo., Inc.*, 2013 COA 144, ¶ 21, —— P.3d —— (" 'There is no doubt that a question is "controlling" if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for dismissal that might have been ordered without the ensuing district court proceedings.' " (quoting 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3930, at 496 (2012))). If the statute of limitations in section 13–80–101(1)(k) bars the Bank's complaint, then any disposition rendered by the district court would be vacated.

¶ 12 In addition, we conclude that the issue here presents an unresolved question of law. Issues regarding statutory interpretation are questions of law. *Clyncke v. Waneka*, 157 P.3d 1072, 1076 (Colo. 2007). Further, there is no Colorado appellate court decision discussing section 13–80–101(1)(k), let alone one resolving the purported conflict between it and section 13–52102(1). *See Wahrman*, 313 P.3d at 688 (assuming that questions of first impression involve unresolved questions of law).

¶ 13 Therefore, because the issue presented here is both case-dispositive and presents an unresolved question of law, the Pandys'

petition for interlocutory appeal satisfies the requirements of C.A.R. 4.2.

## III. Statute of Limitations

¶ 14 The Pandys contend the three-year statute of limitations in section 13–80–101(1)(k) bars the Bank's complaint. We disagree.

### A. Standard of Review

¶ 15 We review de novo questions of statutory interpretation. *Wells Fargo Bank, Nat'l Ass'n v. Kopfman*, 226 P.3d 1068, 1072 (Colo. 2010). We begin our analysis with the plain language of the statute. *Id.* If the statute is unambiguous on its face, then we look no further. *Id.*; *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002).

### B. Applicable Law

¶ 16 Three sections of Colorado statutory law are relevant to the Pandys' contention: section 13–80–101(1)(k); section 13–53–103, C.R.S. 2014; and section 13–52–102(1).

#### 1. Section 13–80–101(1)(k)

¶ 17 Colorado has a three-year statute of limitations applicable to all civil actions accruing outside the state, if the foreign jurisdiction's statute of limitations is longer than Colorado's. § 1380–101(1)(k). A cause of action for debt, obligations, money owed, or performance accrues under Colorado law on the date it becomes due. § 13–80–108(4), C.R.S. 2014.

¶ 18 Michigan law requires that quiet title actions be brought within fifteen years from the date of accrual. Mich. Comp. Laws § 600.5801(4) (2014). Additionally, actions on noncontractual money obligations in Michigan have a statute of limitations of ten years. Mich. Comp. Laws § 600.5809(3) (2014).

#### 2. Section 13–53–103

¶ 19 The Uniform Enforcement of Foreign Judgments Act (the UEFJA) allows for the collection of foreign judgments in the same manner as domestic judgments as long as they are properly authenticated and filed with a court in Colorado. § 13–53–103. The UEFJA does not replace common law means of enforcing foreign judgments through the initiation of a civil action; rather, it provides an alternative, simplified method for domesticating foreign judgments in Colorado. *Kopfman*, 226 P.3d at 1071. The UEFJA permits judgment creditors to file an authenticated foreign judgment with the "office of the clerk of any court of this state which would have had jurisdiction over the original action had it been commenced first in this state." § 13–53–103.

¶ 20 Once filed, the foreign judgment "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the court of this state in which filed and may be enforced or satisfied in like manner." *Id.*

¶ 21 This filing procedure is not "an action" for purposes of statutes of limitations; rather, "[i]t is a step designed to convert a foreign judgment into a domestic judgment capable of being enforced through the judicial processes of this state." *Griggs v. Gibson*, 754 P.2d 783, 785 (Colo. App. 1988); *see also In re Marriage of Lyon*, 764 P.2d 384, 385 (Colo. App. 1988); *Hansen v. Pingenot*, 739 P.2d 911, 913 (Colo. App. 1987); *Hunter Tech., Inc. v. Scott*, 701 P.2d 645, 646 (Colo. App. 1985).

#### 3. Section 13–52–102(1)

¶ 22 However, a domesticated foreign judgment alone does not constitute a lien on a debtor's real property. *See Baum v. Baum*, 820 P.2d 1122, 1123 (Colo. App. 1991). Rather, "[i]n order to create such a lien, a creditor must file a transcript of judgment in the county where the property is located." *Id.* Once the transcript of judgment is filed with the clerk and recorder, the judgment becomes "a lien upon all the real estate ... in the county where such transcript of judgment is recorded, owned by such judgment debtor or which such judgment debtor may afterwards acquire in such county." § 13–52–102(1).

¶ 23 As applicable here, a judgment in Colorado may be executed on within twenty years of its entry; however, judgment liens

expire six years after entry of judgment. *Id.*; C.R.C.P. 54(h). "In the case of judgment liens based on foreign judgments domesticated in Colorado under [the UEFJA], the six-year period begins to run from the date the foreign court entered the original judgment." *Kopfman*, 226 P.3d at 1071 (citing *Baum*, 820 P.2d at 1123).

## C. Analysis

¶ 24 The Bank obtained the judgment against Joseph Pandy in the Michigan circuit court in August 2010. In April 2012, under the UEFJA, it domesticated the Michigan judgment in a Colorado district court. In January 2013, the Bank recorded a transcript of the domesticated judgment in Grand County, thereby establishing a statutory judgment lien on Joseph Pandy's property. At that point, under section 13–52–102(1), the judgment lien would remain effective until August 2016, six years from the date of the original Michigan judgment. *See Baum*, 820 P.2d at 1123.

¶ 25 The Pandys admit that the Bank secured a valid statutory lien on all of Joseph Pandy's real property located in Grand County. However, they argue that because title to the C Lazy U Homesteads is held by the Trust, the Bank's judgment lien applies only to Joseph Pandy's individual property, and not the Trust's assets.

¶ 26 Specifically, the Pandys rely on *Walker v. Staley*, 89 Colo. 292, 295, 1 P.2d 924, 925 (1931), to argue that judgment creditors cannot foreclose on the real property of a judgment debtor when title to the property is held by a third party. The supreme court in *Walker* said: "Where title to real property claimed to belong to a judgment debtor stands in the name of another, a creditor's suit is the proper proceeding to subject the property to the satisfaction of a judgment." *Id.* According to the Pandys, *Walker* requires the Bank to obtain a judgment against the Trust under a creditor's suit, and because creditors' suits are considered new "actions," the Bank's complaint is barred by section 13–80–101(1)(k)'s three-year statute of limitations. *See Equisearch, Inc. v. Lopez*, 722 P.2d 426, 428 (Colo. App. 1986). We disagree.

¶ 27 First, contrary to the Pandys' assertions, we conclude that the three-year statute of limitations in section 13–80–101(1)(k) is inapplicable to the Bank's complaint. Although at this point section 13–80–101(1)(k) might prevent the Bank from bringing a civil action to alter the record title to the C Lazy U Homesteads, it does not preclude the Bank from collecting on its previously obtained judgment. The applicable statute here is section 13–52–102(1), which gives the Bank six years from the date of the Michigan judgment to foreclose on the judgment lien. *See Baum*, 820 P.2d at 1123. Thus, because the Bank brought its quiet title and foreclosure action within six years of the Michigan judgment, the action is not precluded by the statute of limitations.

¶ 28 Second, even if a creditor's suit may be necessary in some circumstances, we reject the Pandys' argument that such an action is required to foreclose on the C Lazy U Homesteads. In its complaint, the Bank alleges that the Pandys established the Trust as a revocable trust. And in his deposition, Joseph Pandy read from the Trust instrument, which stated his right to amend and revoke the trust.

¶ 29 Thus, the Bank asserts that because the Trust is revocable, its assets are also assets of its settlors, Joseph and Elizabeth Pandy, and that Joseph Pandy's assets are subject to the claims of his creditors, including the Bank. Restatement (Third) of Trusts § 25 cmt. e (2003) ("[P]roperty held in [a revocable] trust is subject to the claims of creditors of the settlor ... if the same property belonging to the settlor ... would be subject to the claims of the creditors....").

¶ 30 Accordingly, if the trial court finds that the Trust is a revocable trust—a question on which we express no opinion—the court may also conclude that some or all of the Trust's interest in the C Lazy U Homesteads is an asset of Joseph Pandy individually. The Bank's foreclosure and quiet title action would merely constitute an attempt to collect on its previously established and properly domesticated judgment. Whether the Bank may execute its judgment against property owned by the Trust does not alter the

record ownership of the C Lazy U Homesteads.

¶ 31 Therefore, we conclude that the three-year statute of limitations in section 13–80–101(1)(k) does not bar the Bank's complaint for quiet title on and foreclosure of the Trust's property.

### IV. Conclusion

¶ 32 The order is affirmed and the case is remanded for further proceedings.

JUDGE WEBB and JUDGE J. JONES concur.