Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 20, 2016

**2016 CO 49**

**No. 15SC345, <u>Pandy v. Independent Bank</u>—Revocable Trust—Settlor—Judgment Lien.**

This case principally concerns whether property titled in the name of a judgment debtor's co-settled revocable trust is subject to a judgment lien against the debtor.  The petitioners are co-settlors and co-trustees of a revocable trust that holds title to certain real property in Colorado.  The respondent obtained two judgments against one of the petitioners in another state.  After domesticating those judgments and recording transcripts of the Colorado judgments, the respondent filed an action to quiet title and for a decree of foreclosure.  The petitioner moved for judgment on the pleadings, arguing that the respondent's complaint was barred by what the petitioner argued was the applicable statute of limitations set forth in section 13-80-101(1)(k), C.R.S. (2015).  The district court denied the motion, a division of the court of appeals granted leave to file an interlocutory appeal and affirmed that ruling, and the supreme court granted certiorari.

The court now concludes that as a settlor of a revocable trust, the petitioner held an ownership interest in the trust's assets.  Accordingly, the respondent could properly

seek to enforce its judgment against the petitioner in this case, and its action was not barred by the statute of limitations set forth in section 13-80-101(1)(k).

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 49

**Supreme Court Case No. 15SC345**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1733

**Petitioners:**

Joseph T. Pandy, a/k/a Joseph Pandy Jr., Elizabeth Pandy, a/k/a Elizabeth A. Pandy; The Joseph Pandy Jr. and Elizabeth Pandy Living Trust, a/k/a Joseph Pandy Jr. and Elizabeth A. Pandy Living Trust dated November 10, 2003; Joseph T. Pandy as Trustee, Elizabeth A. Pandy as Trustee,

v.

**Respondent:**

Independent Bank, a Michigan bank.

## Judgment Affirmed
*en banc*
June 20, 2016

**Attorneys for Petitioners:**
The Whitmer Law Firm, LLC
Kent H. Whitmer
William G. Berry
  *Hot Sulphur Springs, Colorado*

**Attorneys for Respondent:**
The Law Firm of John A. Lobus, P.C.
John A. Lobus
  *Lakewood, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 This case principally concerns whether property titled in the name of a judgment debtor's co-settled revocable trust is subject to a judgment lien against the debtor. The petitioners, Joseph T. Pandy and Elizabeth Pandy, are co-settlors and co-trustees of a revocable trust that holds title to certain real property in Colorado. The respondent, Independent Bank (the "Bank"), obtained two judgments against Mr. Pandy in Michigan. After domesticating those judgments in the district court for Grand County, Colorado and recording transcripts of the Colorado judgments with the Grand County Clerk and Recorder, the Bank filed the present action to quiet title and for a decree of foreclosure.

¶2 The Pandys subsequently moved for judgment on the pleadings, arguing that the Bank's complaint was barred by what they argued was the applicable statute of limitations, namely, the three-year statute set forth in section 13-80-101(1)(k), C.R.S. (2015). The district court denied the Pandys' motion, and the Pandys brought an interlocutory appeal in the court of appeals. A division of that court affirmed the district court's denial of the motion for judgment on the pleadings, Indep. Bank v. Pandy, 2015 COA 3, ¶¶ 1, 31–32, __ P.3d __, and we granted certiorari.[1]

¶3 We now affirm. We conclude that as a settlor of a revocable trust, Mr. Pandy held an ownership interest in the trust's assets. Accordingly, the Bank could properly

---

[1] We granted certiorari to review the following issue:

> Whether the court of appeals erred in holding that property titled in the name of a judgment debtor's co-settled, revocable trust can also be the debtor's property and is therefore subject to liens obtained by his judgment creditors pursuant to section 13-52-102(1), C.R.S. 2015.

seek to enforce its judgment against Mr. Pandy in this case, and its action was not barred by the statute of limitations set forth in section 13-80-101(1)(k).

## I. Facts and Procedural History

¶4 Although this case is before us on an abbreviated record, the pertinent facts appear to be undisputed.

¶5 The Pandys are co-settlors and co-trustees of a revocable trust known as the Joseph Pandy Jr. & Elizabeth Pandy Living Trust, aka The Joseph Pandy Jr. & Elizabeth A. Pandy Living Trust Dated November 10, 2003 (the "Trust"). In 2005, the Trust took title to certain real property in Grand County (the "Property").

¶6 In August 2010, the Bank obtained judgments against Mr. Pandy in the amounts of $923,356.16 and $34,953.93 in a Michigan state court. In April 2012, the Bank domesticated these judgments in the Grand County district court and recorded transcripts of the domesticated judgments in that county.

¶7 In March 2014, the Bank filed a Complaint for Quiet Title and Decree of Foreclosure against the Pandys. The complaint sought, among other things, (1) an order decreeing that the Bank's recorded transcripts of judgment were valid liens on the Property to the extent of Mr. Pandy's ownership interest therein and (2) a decree of foreclosure directing the Grand County sheriff to sell the Property in a foreclosure sale and to apply the proceeds to satisfy the costs and fees associated with the foreclosure and the Bank's judgment against Mr. Pandy.

¶8 The Pandys subsequently filed a C.R.C.P. 12(c) motion for judgment on the pleadings, asserting that the Bank's complaint was barred by the three-year statute of

3

limitations set forth in section 13-80-101(1)(k). In that motion, the Pandys contended that the Bank's cause of action accrued in Michigan when the judgment entered there. They further argued that under Michigan law, the statute of limitations on noncontractual money obligations is ten years. Section 13-80-101(1)(k), however, provides that all civil actions accruing outside of Colorado must be commenced within three years if the limitations period of the place in which the action accrued was greater than that in Colorado. Accordingly, the Pandys asserted that the present action was governed by section 13-80-101(1)(k)'s three-year statute.

¶9 In a written order, the district court denied the Pandys' motion. After expressing its uncertainty as to the meaning of section 13-80-101(1)(k), the court concluded that once the Bank domesticated its judgment, section 13-52-102(1), C.R.S. (2015), applied and allowed the Bank to collect on its judgment.

¶10 In reaching this conclusion, the court noted that in enacting section 13-52-102(1), the Colorado legislature sought to make it easy for judgment creditors to collect against Colorado judgment debtors. Specifically, section 13-52-102(1) allowed a judgment creditor to collect by domesticating a foreign judgment instead of filing a second lawsuit, which, the court observed, was the proper procedure prior to the enactment of section 13-52-102. The court also based its finding on the fact that the Bank was no longer attempting to obtain a judgment. Rather, it was attempting to collect on a judgment, and section 13-80-101(1)(k) did not address the time period in which a party may do so.

4

¶11 After receiving the district court's order, the Pandys petitioned the court of appeals for leave to file an interlocutory appeal pursuant to C.A.R. 4.2. The court granted the petition, and a division ultimately affirmed the district court's ruling. See Indep. Bank, ¶¶ 1, 32. Like the district court, the division concluded that section 13-80-101(1)(k)'s three-year statute of limitations did not bar the Bank's action to collect on its previously obtained judgment. Id. at ¶¶ 27, 31. The division further noted the Bank's contentions (and the record support therefor) that (1) the Trust was revocable; (2) as a result, the Trust's assets were also assets of its settlors, the Pandys; and (3) therefore, Mr. Pandy's assets were subject to the claims of his creditors, including the Bank. Id. at ¶¶ 28–29. The division stated that if the Trust was indeed revocable (which is undisputed here), then the Bank's foreclosure and quiet title action "would merely constitute an attempt to collect on its previously established and properly domesticated judgment." Id. at ¶ 30.

¶12 The Pandys then sought, and we granted, certiorari.

## II. Standard of Review

¶13 This case presents a question of law, namely, whether property titled in the name of a judgment debtor's co-settled revocable trust is subject to a judgment lien against the debtor. We review issues of law de novo. People in the Interest of S.N. v. S.N., 2014 CO 64, ¶ 5, 329 P.3d 276, 279.

## III. Analysis

¶14 We begin by addressing whether Mr. Pandy, as a co-settlor of the Trust, had an ownership interest in the Trust and, if so, whether the Bank could properly seek to

5

enforce its judgment against that interest. We then consider whether the statute of limitations set forth in section 13-80-101(1)(k) applies and bars the Bank's claims in this case.

## A. Settlor's Interest in Revocable Trust Property

¶15   The Pandys contend that the division erred in holding that property titled in the name of a judgment debtor's co-settled revocable trust can also be the debtor's property and thus is subject to liens obtained by the debtor's judgment creditors pursuant to section 13-52-102(1).

¶16   A revocable trust is "[a] trust in which the settlor reserves the right to terminate the trust and recover the trust property and any undistributed income." Revocable Trust, Black's Law Dictionary (10th ed. 2014). Moreover, the nature and extent of the beneficial interests or powers that a settlor may reserve or confer on others are not specifically limited. Restatement (Third) of Trusts § 25 cmt. b (2016). As a result, "the settlor of a revocable trust necessarily retains the functional equivalent of ownership of the trust assets." 3 Austin Wakeman Scott, William Franklin Fratcher & Mark L. Ascher, Scott & Ascher on Trusts § 15.4.2, at 960 (5th ed. 2007); see also Restatement (Third) of Trusts § 25 cmt. a (2016) ("In other substantive respects (such as creditors' rights), the property held in a revocable trust is ordinarily to be treated as if it were property of the settlor and not of the beneficiaries."). This is true even though legal title to the trust's assets may be held by the trust or a trustee. See Restatement (Third) of Trusts § 74 cmt. a (2016) (noting that the Restatement section concerning the effect of the power of revocation "deals with situations in which a person currently has, by reason of

6

a power of revocation, . . . the equivalent of ownership of the trust property, even though the legal title to the property is held by the trustee"); see also § 38-30-108.5(1), C.R.S. (2015) ("A trust may acquire, convey, encumber, lease, or otherwise deal with any interest in real or personal property in the name of the trust.").

¶17 In light of these principles, and absent any contrary authority cited by the Pandys, we conclude that Mr. Pandy, as co-settlor of the revocable Trust, retained an ownership interest in the Trust's assets. The question thus becomes whether that interest is properly subject to the claims of Mr. Pandy's creditors.

¶18 Although this court does not appear to have addressed this question, numerous other courts have done so, and they generally have concluded that the assets of a revocable trust are properly subject to the claims of the settlor's creditors. See, e.g., In re Kester, 339 B.R. 749, 755 (B.A.P. 10th Cir. 2006), aff'd, 493 F.3d 1208 (10th Cir. 2007) (noting the general rule in Kansas that during a trust settlor's lifetime, the property of a revocable trust is subject to claims of the settlor's creditors); In re Morgenstern, 542 B.R. 650, 656 (Bankr. D. N.H. 2015) (noting that the New Hampshire Uniform Trust Code provides that during a settlor's lifetime, the property of a revocable trust is subject to claims of the settlor's creditors); In re Nielsen, 526 B.R. 351, 355 (Bankr. D. Haw. 2015) ("The common law also treats the settlor of a revocable living trust as the owner of the trust res for purposes of creditors' rights."); In re Bogetti, 349 B.R. 14, 18 (Bankr. E.D. Cal. 2006) ("California law permits a creditor of a settlor of a revocable trust to satisfy a claim against the settlor from property held by the trust."); see also Restatement (Third) of Trusts § 25 cmt. e (2016) ("[P]roperty held in [a revocable] trust

7

is subject to the claims of creditors of the settlor . . . if the same property belonging to the settlor . . . would be subject to the claims of the creditors . . . ."). See generally Scott & Ascher on Trusts § 15.4.2, at 960 ("The courts, as well as the legislatures, have concluded, in a variety of contexts, that the assets of a revocable trust are, in fact, subject to the claims of the settlor's creditors, both during the settlor's lifetime and after the settlor's death . . . ."). Indeed, the Pandys concede that under appropriate circumstances, property titled in the debtor's co-settled revocable trust may be subject to creditor's liens under section 13-52-102, which, the Pandys note, attaches liens to a debtor's equitable interests.

¶19 A determination that property held in a revocable trust is subject to the claims of the settlor's creditors is consistent with section 13-52-105, C.R.S. (2015), which provides, in pertinent part, "Every interest in land, legal and equitable, shall be subject to levy and sale under execution . . . ." See also Shepler v. Whalen, 119 P.3d 1084, 1087 (Colo. 2005) ("A lien may attach to any interest the judgment debtor has in land, whether legal or equitable.").

¶20 Such a determination is also consistent with our recognition, albeit in a different context, that (1) a debtor may not tie up his or her property in a trust in such a way as to allow the debtor to enjoy the property while preventing his or her creditors from reaching it and (2) an oral irrevocable spendthrift trust could not and did not protect the settlor-beneficiary from future creditors. See In re Cohen, 8 P.3d 429, 433 (Colo. 1999).

¶21 Accordingly, we conclude that Mr. Pandy's ownership interest in the Trust's assets is properly subject to the Bank's claims as a judgment creditor of Mr. Pandy's.

8

¶22  We are not persuaded otherwise by the Pandys' contention that under section 38-30-108.5, a trust is a separate legal entity that can hold legal title to property and thus a creditor must file a separate action against the trust in order to enforce a judgment against the settlor's interests in that trust.

¶23  Section 38-30-108.5(1) provides, "A trust may acquire, convey, encumber, lease, or otherwise deal with any interest in real or personal property in the name of the trust."

¶24  Section 38-30-108.5(3), in turn, provides, in pertinent part:

> Nothing in this section shall be construed to be the exclusive manner in which title to an interest in real or personal property may be held by or on behalf of a trust, and title to an interest in real or personal property may be held by or on behalf of a trust in any other manner permitted by law.

¶25  Section 38-30-108.5 was enacted in response to the division's decision in Lackner v. King, 972 P.2d 690 (Colo. App. 1998), rev'd sub nom. Lagae v. Lackner, 996 P.2d 1281 (Colo. 2000).  See R. Sterling Ambler, Title to Colorado Real Property Held in Trust, 31 Colo. Law. 85, 85–86 (May 2002) (discussing the history of section 38-30-108.5 and related provisions).  In Lackner, 972 P.2d at 691–92, the division concluded that a deed conveying certain property from a grantor to a debtor in his capacity as co-trustee of a trust did not satisfy the requirements of a then-existing statute setting forth the guidelines that a grantor was to follow to provide notice that the grantee was obtaining the property in a representative capacity.  Accordingly, the property at issue was subject to claims of the debtor-trustee's creditors, even though that property belonged to the trust.  See id. at 692.

9

¶26 In response to this decision, the General Assembly passed legislation modifying the statute at issue in Lackner to make it easier to avoid the problems created by that case. See Ambler, 31 Colo. Law. at 86. In addition, the General Assembly enacted section 38-30-108.5, the purpose of which was to make clear that a trust could hold legal title to property in its own name without other reporting requirements. See Ambler, 31 Colo. Law. at 86.

¶27 As the foregoing history makes clear, the purpose for section 38-30-108.5's enactment was narrow and specific. Consistent with that legislative intent, we perceive nothing in section 38-30-108.5, nor have we seen any pertinent legislative history, suggesting that the legislature intended to alter any other ownership interests in trust assets, including the ownership interest held by the settlor of a revocable trust. Nor have the Pandys cited any such authority or legislative history.

¶28 We likewise are unpersuaded by the Pandys' contention that Walker v. Staley, 1 P.2d 924 (Colo. 1931), required the Bank to commence a separate proceeding against the Trust. In Walker, the plaintiff obtained a judgment against the defendant, and the court conducted a supplementary proceeding concerning certain real property. Id. at 924–25. In this proceeding, the defendant testified that the real property at issue was titled in his wife's name, and he provided a history of his wife's ownership. Id. at 925. Notwithstanding the defendant's undisputed testimony, and without any appearance or testimony from the defendant's wife, the court found that the property belonged to the defendant and that title was kept in his wife's name in order to defraud the plaintiff's judgment creditors. Id. The court then appointed a receiver and ordered the

10

receiver to sell the property and to pay the receiver's expenses, any court costs, and the judgment against the defendant. Id.

¶29 The defendant appealed, and this court reversed. Id. As pertinent here, we held that the trial court had no power to enter the orders that it did without affording the wife her day in court. Id. We stated, "Where title to real property claimed to belong to a judgment debtor stands in the name of another, a creditor's suit is the proper proceeding to subject the property to the satisfaction of a judgment." Id.

¶30 Walker is distinguishable from the case before us. In Walker, the defendant-debtor had neither a legal nor an equitable interest in the property at issue. Thus, the creditor was required to take action to establish the debtor's interest and to subject the property to the satisfaction of a judgment. Here, in contrast, Mr. Pandy had an ownership interest in the Trust's assets. Accordingly, the Bank was not required to file a separate action to establish such an interest as a prerequisite to subjecting the property to the satisfaction of a judgment.[2]

¶31 Lastly, we are unpersuaded by the Pandys' contention that for a number of reasons, requiring creditors to seek real estate trust assets in a separate civil action would be "good policy." As noted above, our legislature and this court have made clear that a lien may properly attach to any interest the judgment debtor has in land,

---

[2] The fraudulent transfer cases on which the Pandys appear to rely are distinguishable for the same reason. For example, in Shepler, 119 P.3d at 1087–88, the debtor had neither a legal nor an equitable interest in the property at issue, and thus, the creditor was required to file an action to establish the debtor's interest in the property. Here, for the reasons discussed above, Mr. Pandy's ownership interest in the co-settled revocable Trust's assets existed as a matter of law.

whether legal or equitable.  See § 13-52-105; Shepler, 119 P.3d at 1087.  Moreover, our statutes and civil rules provide the means by which a creditor may execute on such a lien.  See, e.g., § 13-52-102; C.R.C.P. 105.  We are bound to follow these legislative pronouncements and applicable rules, and what may be more appropriate policy is a matter best left to the legislature.

¶32     For these reasons, we conclude that Mr. Pandy retained an ownership interest in the assets of his co-settled revocable trust and that this ownership interest was subject to the Bank's judgment lien against him.  We thus turn to the statute of limitations question raised by the Pandys.

## B.  Statute of Limitations

¶33     Based on their view that the Bank's complaint in this case constituted a new action against the Trust, the Pandys assert, without further analysis, that the division erred in concluding that section 13-80-101(1)(k) is inapplicable.[3]

¶34     Because we disagree with the Pandys' premise that this action was a new action, we are not persuaded.  Specifically, for the reasons set forth above, this action was not a new action.  Rather, it was an action by the Bank against Mr. Pandy to enforce a previously obtained and properly domesticated judgment against assets belonging to Mr. Pandy.[4]

---

[3] As noted above, section 13-80-101(1)(k) provides that all civil actions accruing outside of Colorado must be commenced within three years if the limitations period of the place in which the action accrued was greater than that in Colorado.

[4] Other than their assumption that section 13-80-101(1)(k) applies to a new action against the Trust, the Pandys offer no substantive analysis as to how or why section

## IV. Conclusion

¶35     For these reasons, we affirm the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.

---

13-80-101(1)(k) applies in this case.  Accordingly, we express no opinion on the proper meaning or construction of that statute.