The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 12, 2019

## 2019COA147

**No.19CA0574, *Kissinger & Fellman, PC v. Affiniti Colorado, LLC*— Attorneys and Clients — Attorney-Client Privilege; Business Organizations — Corporations — Dissolution**

Well-settled Colorado law holds that the attorney-client privilege survives the death of a client. In this interlocutory appeal of an order denying a motion for protective order based on the attorney-client privilege, a division of the court of appeals considers, as a matter of first impression, whether the privilege survives the dissolution of a corporation. The division concludes, consistent with the trending majority view, that the attorney-client privilege does not survive a corporation's dissolution when (1) no one with the authority to assert or waive the privilege remains, and (2) there are no ongoing post-dissolution proceedings. The division affirms the district court's order.

COLORADO COURT OF APPEALS                                    **2019COA147**

Court of Appeals No. 19CA0574
City and County of Denver District Court No. 18CV32340
Honorable Michael A. Martinez, Judge

Affiniti Colorado, LLC, a Delaware limited liability company,

Plaintiff-Appellee,

v.

Kissinger & Fellman, P.C., a Colorado professional corporation, and Kenneth S.
Fellman,

Defendants-Appellants.

ORDER AFFIRMED

Division A
Opinion by JUDGE FREYRE
Welling and Tow, JJ., concur

Announced September 12, 2019

Ogborn Mihm, LLP, Michael T. Mihm, Susan H. Jacks, James E. Fogg, Thomas
D. Neville, Denver, Colorado, for Plaintiff-Appellee

Montgomery Little & Soran, P.C., Christopher B. Little, Michael R. McCormick,
Esther H. Lee, Greenwood Village, Colorado, for Defendants-Appellants

¶ 1     In this C.A.R. 4.2 interlocutory appeal, we are asked to decide an attorney-client privilege issue not previously addressed by Colorado courts.  No one disputes that the attorney-client privilege exists "without regard to the non-corporate or corporate character of the client," *A v. Dist. Court*, 191 Colo. 10, 20, 550 P.2d 315, 323 (1976) (citation omitted), or that a corporation may only assert or waive the privilege through "individuals empowered to act" on its behalf, *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 462 (Colo. App. 1993).  As well, our supreme court and other courts presume that the attorney-client privilege ordinarily survives the death of the client.  *Wesp v. Everson*, 33 P.3d 191, 200 (Colo. 2001) (citing *Swidler & Berlin v. United States*, 524 U.S. 399 (1998)).  But what happens when the client is a dissolved corporation and has no one to act on its behalf?  Does the attorney-client privilege survive the corporation's dissolution?  Relying on the majority view of courts in other jurisdictions that have considered this issue, the district court answered that question "no."  We agree with the district court and conclude that the policy reasons supporting the "posthumous" privilege for an individual client do not support the

posthumous privilege for a corporate client. We hold that when (1) a corporation dissolves; (2) there are no ongoing post-dissolution proceedings; and (3) no one with the authority to invoke or waive the corporation's attorney-client privilege remains, the privilege ceases to exist. Therefore, we affirm the district court's order.

¶ 2　　Defendants, Kenneth S. Fellman and the law firm Kissinger & Fellman, P.C. (collectively, Fellman), appeal the district court's order denying their motion for a protective order. Fellman filed the motion in a negligent misrepresentation suit brought by plaintiff, Affiniti Colorado, LLC, alleging that Fellman had made misrepresentations in an "Opinion Letter" that was written to induce it to contract with Fellman's now-dissolved corporate client, EAGLE-Net Alliance (EAGLE-Net), a purported intergovernmental entity.[1] Fellman raised immunity under the Colorado Governmental Immunity Act (CGIA), so the district court set the

---

[1] The parties dispute whether EAGLE-Net was properly formed as an intergovernmental entity. EAGLE-Net asked the district court to assume its status as an intergovernmental agency for the purpose of resolving immunity, and we make the same assumption since it does not affect the outcome. Because no one disputes that EAGLE-Net had a board of directors, officers, and members, we refer to it as a "corporation" for purposes of this appeal.

2

matter for a hearing under *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), and ordered limited discovery related to the immunity issue.  After Affiniti requested communications between Fellman and EAGLE-Net, Fellman sought a protective order based on the attorney-client privilege.  The district court denied the motion and granted C.A.R. 4.2 certification.  We granted Fellman's petition for review.

## I.    Background

¶ 3    EAGLE-Net was formed to deploy and operate a broadband internet network, funded by a federal grant, to provide rural schoolchildren with internet access.  Affiniti is a limited liability company that provides broadband technology to rural communities.  It negotiated and executed a management agreement with EAGLE-Net in 2013, based on an Opinion Letter provided by Fellman, acting as EAGLE-Net's general counsel.  Under the agreement's terms, Affiniti agreed to manage EAGLE-Net's network and provide capital funding for the project in exchange, in part, for EAGLE-Net's agreement to grant Affiniti a security interest in its assets.

¶ 4    In 2015, Affiniti sued EAGLE-Net for breach of the agreement and obtained a judgment. The litigation eventually depleted EAGLE-Net's assets, and on May 27, 2017, the board of directors adopted a resolution to dissolve EAGLE-Net and divest it of its assets. On June 5, 2017, the dissolution process ended, EAGLE-Net ceased to exist, and Fellman no longer represented EAGLE-Net.

¶ 5    During the litigation, federal government officials notified Affiniti that EAGLE-Net had failed to obtain the necessary approval to grant Affiniti a security interest in its assets, contrary to representations allegedly made in the Opinion Letter. Because of the resulting difficulties in collecting on the judgment, Affiniti then brought this negligent misrepresentation action premised on those alleged misrepresentations.

¶ 6    As relevant here, Fellman filed a motion to dismiss, asserting that (1) EAGLE-Net was an intergovernmental agency; (2) Fellman was general counsel for this public entity; and (3) Fellman was, therefore, entitled to immunity under the CGIA. When the court ordered limited discovery and Affiniti requested communications

4

between Fellman and EAGLE-Net, Fellman filed the motion at issue here. The court denied the motion and ordered Fellman to comply with Affiniti's discovery requests.

¶ 7    Fellman then moved for reconsideration and raised several new issues. It argued that (1) because EAGLE-Net was a public entity, special policies, not considered by the court, applied; (2) the work product and deliberative process privileges, not considered by the court, applied; and (3) the public official privilege protected its communications with EAGLE-Net. In denying reconsideration, the district court found that the motion was premised on the same legal theory and that nothing in the motion altered the analysis or the outcome.

## II.    Jurisdiction

¶ 8    Before discussing the merits, we address whether interlocutory review under C.A.R. 4.2 is a proper channel to review the district court's order finding that the attorney-client privilege does not survive the dissolution of a corporation. As recognized by the division in *Adams v. Corrections Corp. of America*, 264 P.3d 640, 644 (Colo. App. 2011), interlocutory review of discovery orders that

5

address "only whether the trial court . . . abused its discretion in a discovery matter" is generally not allowed.  *Id.*; *see also In re W.R. Grace & Co.-Conn.*, 984 F.2d 587, 589 (2d Cir. 1993) ("Pretrial discovery orders are generally not appealable . . . .").  We fully agree with this general proposition, and our decision to review the privilege issue presented here should not be viewed as a departure from it.[2]  Indeed, we note that the general rule in *Adams* is in accord with numerous federal decisions considering the propriety of reviewing discovery orders under the comparable federal interlocutory review statute, 28 U.S.C. § 1292(b) (2018).  These decisions have consistently found such orders improper for interlocutory review.  *See Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991) (denying review of court's order denying the request for bifurcation of proceedings to avoid disclosure of patent infringement opinions); *Oasis Research, LLC v. EMC Corp.*, Nos. 4:10-CV-435, 4:12-CV-526, 2015 WL 5318119, *4 (E.D. Tex. Sept. 11, 2015) (unpublished opinion) (denying review because order

---

[2] Affiniti did not challenge our decision to grant interlocutory review under C.A.R. 4.2 in its response to the petition, nor did it argue that review was improvidently granted.

6

compelling disclosure under the crime fraud exception did not present a pure issue of law); *Fed. Trade Comm'n v. Stefanchik*, No. C04-1852RSM, 2006 WL 3474204, *1-2 (W.D. Wash. Nov. 30, 2006) (unpublished order) (denying interlocutory review because the question whether the client's knowledge of his attorney's knowledge waived the privilege did not involve a controlling question of law); *Isaacson v. Keck, Mahin & Cate*, 875 F. Supp. 478, 481 (N.D. Ill. 1994) (denying review of court's order issued after reviewing materials because the issue did not involve an unresolved question of law); *McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1506, 1533-34 (D. Conn. 1991) (discovery orders generally never present controlling questions of law).

¶ 9    Having first articulated the general rule, the division in *Adams* also recognized that when a discovery order "presents a question of law, such as the availability of a corporation's attorney-client privilege . . . , interlocutory review is occasionally granted." 264 P.3d at 644. Because we are the first division to accept interlocutory review of a discovery order, we explain why, in our view, this is one of those exceptionally rare cases, as contemplated

7

by *Adams*, that meets the exacting criteria for our review under C.A.R. 4.2 and section 13-4-102.1, C.R.S. 2018.

### A. Applicable Law

¶ 10    Section 13-4-102.1(1) provides:

> The court of appeals, under rules promulgated by the Colorado supreme court, may permit an interlocutory appeal of a certified question of law in a civil matter from a district court or the probate court of the city and county of Denver if:
>
> (a) The trial court certifies that immediate review may promote a more orderly disposition or establish a final disposition of the litigation; and
>
> (b) The order involves a controlling and unresolved question of law.

¶ 11    Similarly, C.A.R. 4.2 provides, in relevant part, as follows:

> (a) Discretionary Interlocutory Appeals. Upon certification by the trial court, or stipulation of all parties, the court of appeals may, in its discretion, allow an interlocutory appeal of an order in a civil action. . . .
>
> (b) Grounds for Granting Interlocutory Appeal. Grounds for certifying and allowing an interlocutory appeal are:
>
> (1) Where immediate review may promote a more orderly disposition or establish a final disposition of the litigation; and

8

(2) The order involves a controlling and unresolved question of law.  For purposes of this rule, an "unresolved question of law" is a question that has not been resolved by the Colorado Supreme Court or determined in a published decision of the Colorado Court of Appeals, or a question of federal law that has not been resolved by the United States Supreme Court.

¶ 12    Discretionary review, therefore, may be granted when (1) immediate review may promote a more orderly disposition or establish a final disposition of the litigation; (2) the order involves a controlling question of law; and (3) that question of law is unresolved.  *Indep. Bank v. Pandy*, 2015 COA 3, ¶ 8, *aff'd*, 2016 CO 49; *Kowalchik v. Brohl*, 2012 COA 25, ¶ 13.

## B.    Application

¶ 13    Because there is little dispute that the third factor is satisfied, we address it first, before turning to the other two factors.

### 1.    Unresolved Question of Law

¶ 14    The question certified by the district court — whether the attorney-client privilege survives the dissolution of a corporation — does not involve an exercise of the court's discretion, but instead concerns purely a question of law.  *Adams*, 264 P.3d at 644.  The parties agree that neither our supreme court nor a division of this

9

court has decided this issue, and as we explain in the merits section, most states have not decided this issue either. Therefore, we conclude that Fellman's petition presents an unresolved question of law under C.A.R. 4.2 and section 13-4-102.1.

## 2. More Orderly Disposition

¶ 15    We next consider whether our review may promote a more orderly disposition *or* establish a final disposition of the litigation. Fellman asserts, and Affiniti does not dispute, that immediate review may promote a more orderly disposition of the litigation because the damage that could result from the disclosure of the privileged communications could not be undone on direct appeal. *Wesp*, 33 P.3d at 194 ("[W]hen a secret is out, it is out for all time, and cannot be caught again like a bird, and put back in its cage.") (citation omitted). While that is certainly true, it alone is not enough to satisfy this factor.

¶ 16    While not resolving the entire litigation, review of this privilege issue will lead to a more orderly disposition of the case because of the central role it plays in resolving both the qualified immunity issue and the merits of Affiniti's negligent misrepresentation claim

10

against Fellman. Indeed, the disclosure of prior communications between Fellman and EAGLE-Net will directly affect the court's resolution of the immunity issue, thereby determining whether the lawsuit may proceed at all. As well, the district court's legal finding that no attorney-client privilege exists means that attorney-client communications related to the merits — negligent misrepresentation — will also be substantially affected. Under these circumstances, we conclude that interlocutory review of this legal question may — and almost certainly will — promote a more orderly disposition of the litigation and that the petition satisfies the requirements of C.A.R. 4.2(b)(1) and section 13-4-102.1(1)(a).

### 3. Controlling

¶ 17     No division of this court has developed a single definition of "controlling" for purposes of a C.A.R. 4.2 petition. *Indep. Bank*, ¶ 9. Rather, "whether an issue is 'controlling' depends on the nature and circumstances of the order being appealed." *Id.* (citing *Adams*, 264 P.3d at 645 n.8). Factors to be considered in making this determination include: (1) whether the issue is one of widespread public interest, *see Adams*, 264 P.3d at 646; (2) whether the issue

11

would avoid the risk of inconsistent results in different proceedings, *see Shaw Constr., LLC v. United Builder Servs., Inc.*, 2012 COA 24, ¶ 12, *overruled on other grounds by Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 11; *Green v. Duke Power Co.*, 290 S.E.2d 593, 596 (N.C. 1982) (interlocutory appeal proper due to the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issues); (3) whether the issue is "case dispositive," *see Kowalchik*, ¶ 15 (an issue is controlling where a failure to join an indispensable party who cannot feasibly be joined subjects a plaintiff's complaint to dismissal and thus, is potentially case-dispositive); and (4) whether the case involves "extraordinary facts," *Adams*, 264 P.3d at 646.

¶ 18    For the following confluence of reasons, we conclude that the question of law presented here is "controlling."  First, as noted above, the availability or unavailability of the privilege will determine not only the outcome of the ancillary immunity proceeding, but it will also be central to resolving the outcome of the negligent misrepresentation claim.  Therefore, our review of this legal issue may be "case-dispositive." *Kowalchik*, ¶ 15.

12

¶ 19    Additionally, novel attorney-client privilege issues are issues of "great significance to our legal system," a relevant factor for accepting interlocutory review in this court and in our supreme court. *Wesp*, 33 P.3d at 194 (granting interlocutory review under C.A.R. 21); *Adams*, 264 P.3d at 646 (finding issue not controlling in part because plaintiffs did not present an issue of widespread public interest).

¶ 20    Finally, while we agree that interlocutory review of discovery orders is almost never warranted, precedent exists for reviewing the precise legal issue presented here. *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1096-97 (5th Cir. 1970) (the availability of the corporate attorney-client privilege as against its shareholders is a "controlling question of law" and proper for interlocutory review under 28 U.S.C. § 1292(b)); *Radiant Burners, Inc. v. Am. Gas Ass'n*, 320 F.2d 314, 317 (7th Cir. 1963) (accepting review under 28 U.S.C. § 1292(b) based on district court's finding that corporation's right to claim the attorney-client privilege is a controlling question of law); *Red Vision Systems, Inc. v. Nat'l Real Estate Info. Servs., L.P.*, 108 A.3d 54, 58-59 (Pa. Super. Ct. 2015) (accepting interlocutory review of whether

the corporate attorney-client privilege survives dissolution under Pennsylvania's three-part standard); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009) ("[I]n extraordinary circumstances," 28 U.S.C. § 1292(b) creates an escape hatch from the finality rule for "particularly injurious or novel privilege ruling[s]" that "involve[] . . . new legal question[s] or [are] of special consequence.").

¶ 21    For these reasons, we conclude that this is one of those exceptionally rare cases described in *Adams*, where the discovery issue presented involves a controlling issue of law, and that it meets the criteria for our review under C.A.R. 4.2 and section 13-4-102.1.

### III.    The Attorney-Client Privilege Does Not Survive a Corporation's Dissolution If All Proceedings Have Been Concluded and No One Remains to Act on the Corporation's Behalf

¶ 22    Fellman challenges the court's ruling on three grounds.  First, it contends that because the attorney-client privilege applies equally to corporations and individuals in Colorado, and because Colorado law presumes the privilege survives the death of an individual, the privilege must necessarily survive the dissolution of the corporation. To hold otherwise, it continues, would contravene well-settled

14

precedent. As part of this contention, Fellman further asserts that Mr. Fellman was authorized to invoke the privilege because of his status as former general counsel. Fellman next contends that the court failed to apply the public policy considerations raised in the reconsideration motion. Finally, it contends that the district court did not properly manage discovery. We address and reject each preserved contention.

## A. Standard of Review

¶ 23 We review a court's discovery ruling for an abuse of discretion. *Bond v. Dist. Court,* 682 P.2d 33, 40 (Colo. 1984). We will not reverse a court's ruling unless its "decision is manifestly arbitrary, unreasonable, or unfair, or [it] applies incorrect legal standards." *Medina v. Conseco Annuity Assurance Co.,* 121 P.3d 345, 347 (Colo. App. 2005). This standard of review also applies to a district court's conclusions regarding the attorney-client privilege. *Black v. Sw. Water Conservation Dist.,* 74 P.3d 462, 468 (Colo. App. 2003); *see also Fox v. Alfini,* 2018 CO 94, ¶¶ 14, 17, 18 (a district court's decision of whether attorney-client privilege applies in the discovery context is reviewed for an abuse of discretion).

15

## B.    Attorney-Client Privilege

¶ 24    The attorney-client privilege "protects communications between attorney and client relating to legal advice." *All. Constr. Sols., Inc. v. Dep't of Corrs.*, 54 P.3d 861, 864 (Colo. 2002).  It is codified in section 13-90-107(1)(b), C.R.S. 2018, which provides as follows:

> An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment; nor shall an attorney's secretary, paralegal, legal assistant, stenographer, or clerk be examined without the consent of his employer concerning any fact, the knowledge of which he has acquired in such capacity.

¶ 25    The privilege recognizes that attorneys cannot provide effective legal advice unless the client reveals all pertinent circumstances of the case, no matter how embarrassing or inculpatory those facts are.  *Wesp*, 33 P.3d at 196.  Indeed, "the right of parties within our justice system . . . is rendered meaningless unless communications between attorney and client are ordinarily protected from later disclosure without client consent."  *Id.*  And the privilege is consistent with Rule 1.6(a) of the Colorado Rules of Professional Conduct requiring that attorneys "not reveal information relating to

16

the representation of a client," without the client's informed consent or unless disclosure is otherwise permitted. The privilege encompasses confidential communications made by the client to an attorney and communications from the attorney to the client. *People v. Tippett*, 733 P.2d 1183 (Colo. 1987). It rests with the client and can only be waived by the client. *People v. Trujillo*, 144 P.3d 539, 542 (Colo. 2006). The burden of establishing the privilege is on the party seeking to invoke it. *Fox*, ¶ 19.

¶ 26  Well-settled law presumes that the attorney-client privilege survives the death of the client because "[k]nowing that communications will remain confidential even after death encourages the client to communicate fully and frankly with counsel. . . . Posthumous disclosure of such communications may be as feared as disclosure during the client's lifetime." *Wesp*, 33 P.3d at 200 (quoting *Swidler & Berlin*, 524 U.S. at 407).

¶ 27  The attorney-client privilege applies to corporations and public entities. *See All. Constr. Sols.*, 54 P.3d at 865-70; *see also Ross v. City of Memphis*, 423 F.3d 596, 601 (6th Cir. 2005) (collecting cases holding that governmental entities may invoke the attorney-client

privilege in civil suits and relying on corporate privilege principles to define the privilege available to governmental entities).  But unlike the individual client, a corporation cannot speak directly with its lawyers — it must do so through its agents.  *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981); *Genova*, 72 P.3d at 462.  Thus, a corporation may only assert or waive the attorney-client privilege through individuals empowered to act on its behalf.  *Genova*, 72 P.3d at 462 (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)).  Indeed, the authority to assert and waive a solvent corporation's attorney-client privilege rests with its current management.  *Id.*

### C.    Posthumous Attorney-Client Privilege

¶ 28    Fellman urges us to follow the well-settled general rule that the privilege survives the death of a natural person, but acknowledges that whether the privilege survives the dissolution of a corporation is less settled.  *See In re Grand Jury Subpoena # 06-1*, 274 F. App'x 306, 309 (4th Cir. 2008) (whether "the corporate attorney-client privilege survives the dissolution of the corporate

18

entity" is an "unsettled legal question").  Thus, we begin with the well-settled jurisprudence.

¶ 29     In *Swidler & Berlin*, 524 U.S. at 410, the United States Supreme Court acknowledged that the attorney-client privilege is "one of the oldest recognized privileges in the law" and held that it survives the death of a client.  In that case, an individual sought legal advice concerning investigations related to the firings of White House Travel Office employees.  *Id.* at 401.  The individual later committed suicide, and a federal grand jury issued a subpoena for the attorney's notes.  *Id.* at 402.  In the action to enforce the subpoena, the district court concluded that the notes were protected by the attorney-client and work-product privileges.  *Id.*

¶ 30     The appellate court reversed and concluded that the posthumous attorney-client privilege was not absolute in the criminal context.  *Id.*  It found "a posthumous exception to the privilege for communications whose relative importance to particular criminal litigation is substantial" and applied the exception to enforce the subpoena.  *Id.*

¶ 31    The Supreme Court disagreed and reversed. *Id.* at 410. It recognized that a posthumous privilege, subject to a few exceptions, was well settled at common law, and found that "a contrary rule would be a modification of the common law." *Id.* at 407. The Court then discussed the general rationale for the posthumous privilege, explaining that it encourages frank and open communication and that "[c]lients may be concerned about reputation, civil liability, or possible harm to friends or family." *Id.* at 407. It held that because these considerations would be undermined if the posthumous privilege did not apply in criminal cases, no such exception existed. *Id.* at 408. The Colorado Supreme Court adopted this rule in *Wesp*, 33 P.3d at 197. Thus, both cases reasoned that a posthumous privilege was justified to (1) ensure full and frank communication between clients and attorneys; (2) protect a client's reputation; (3) avoid civil liability; and (4) avoid embarrassment and potential harm to friends and family. *Swidler & Berlin*, 524 U.S. at 407; *Wesp*, 33 P.3d at 200.

¶ 32    These justifications, however, do not apply with equal force to defunct corporations for several reasons. First, while frank and full

20

communications are undoubtedly important between corporations and their attorneys, a corporation's privilege is held by its managers, who often change over time. Thus, no individual manager can be assured that future managers will not waive the privilege and reveal confidences.

¶ 33 The United States Supreme Court alluded to this distinction in *Weintraub*, 471 U.S. at 345. There, the Court considered whether a bankruptcy trustee could waive a dissolved corporation's attorney-client privilege in bankruptcy proceedings. *Id.* It noted that because directors and managers change, and the right to assert or waive the privilege applies only to current directors and managers, "[d]isplaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Id.* at 349. Consequently, even frank and open communications between corporate managers and their attorneys are subject to disclosure by future management, undermining this reason for presuming a "posthumous" privilege following a corporation's dissolution.

¶ 34    As well, corporations do not have friends or family who could

be embarrassed or harmed, nor do they have a reputation to protect

following dissolution.  *Red Vision Sys., Inc.*, 108 A.3d at 67-68

(citing *Gilliland v. Geramita,* No. 2:05-CV-01059, 2006 WL 2642525,

at *4 (W.D. Pa. Sept. 14, 2006)).  Further, unlike an individual,

whose estate can be sued civilly, once a corporation is fully

dissolved, any suit brought against it must be filed within two

years.  § 7-90-911, C.R.S. 2018.  As one federal district court has

noted,

> [a] dissolved corporation does not have the
> same concerns as a deceased natural person
> and therefore has less need for the privilege
> after dissolution is complete.  As there are
> usually no assets left and no directors, the
> protections of the attorney-client privilege are
> less meaningful to the typical dissolved
> corporation.  Moreover, because the
> attorney-client privilege has the effect of
> withholding relevant information from the
> factfinder, it should be applied only when
> necessary to achieve its limited purpose of
> encouraging full and frank disclosure by the
> client to his or her attorney.

*City of Rialto v. U.S. Dep't of Def.,* 492 F. Supp. 2d 1193, 1200 (C.D.

Cal. 2007); *see also Sec. & Exch. Comm'n v. Carrillo Huettel LLP*, No.

13 Civ. 1735(GBD)(JCF), 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8,

2015) ("[T]here is no 'tradition' of the privilege surviving the demise of a corporation."); *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, Civ. A. Nos. 05-4120, 05 C 5164, 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012) (corporation dissolved for nearly ten years could not assert privilege); *Lopes v. Vieira*, 688 F. Supp. 2d 1050, 1068 (E.D. Cal. 2010), *on reconsideration*, 719 F. Supp. 2d 1199 (E.D. Cal. 2010) (shell corporation lacking management did not retain the power to assert the attorney-client privilege); *TAS Distrib. Co. v. Cummins Inc.*, No. 07-1141, 2009 WL 3255297, at *2 (C.D. Ill. Oct. 7, 2009) (privilege did not survive corporation's dissolution); John W. Gergacz, *Attorney-Corporate Client Privilege* § 2:8, Westlaw (3d ed. database updated Mar. 2019) (explaining that the rationale for the "posthumous" privilege discussed in *Swidler & Berlin* does not apply to defunct corporations and suggesting a new presumption that the privilege does not survive the dissolution of a corporation).

¶ 35    Fellman appears to concede that the only policy reason supporting the "posthumous" privilege for a dissolved corporation is to encourage full and frank communications between lawyers and clients. And it argues that our supreme court's failure to recognize

23

a "manifest injustice exception" to the privilege in *Wesp*, 33 P.3d at 200, precludes us from finding any exception to the "posthumous privilege" presumption here. We are not persuaded.

¶ 36    Rebuttable presumptions, by their very nature, are not absolute. *Cf. Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 105 n.1 (Colo. 1992) (although there is a presumption that an employee is hired for an indefinite period, it is not absolute and can be rebutted). Our supreme court rejected the manifest injustice exception because it was "at odds with the purposes of the privilege." *Wesp*, 33 P.3d at 201. As in *Wesp*, we reject a presumed "posthumous" privilege for dissolved corporations because the reasons justifying an individual's posthumous privilege simply do not apply with anything close to equal force to a dissolved corporation and are outweighed by the truth-seeking goals of the justice system. Therefore, we conclude that the "posthumous" privilege articulated in *Wesp* does not presumptively apply to dissolved corporations.

¶ 37    Other jurisdictions that have considered this question have concluded that, although the privilege does not generally survive

the dissolution of a corporation, limited post-dissolution circumstances exist where an individual with the authority to act on behalf of a corporation may invoke or waive the privilege. We consider these cases and conclude that in this case, no one with the authority to act on behalf of EAGLE-Net remains to invoke or waive the privilege.

¶ 38    In *Gilliland,* 2006 WL 2642525, the case on which the district court relied, a federal district court considered the same legal issue under similar circumstances. There, plaintiffs sued a corporation for making misrepresentations that induced them to purchase the corporation's worthless stock. *Id.* at *1. At the time of the suit, the corporation had "ceased operations" and was "for all practical purposes out of business," but it had not been dissolved. *Id.* Corporate counsel was joined as a defendant, and the plaintiffs sought discovery of communications related to the representation. *Id.* Counsel asserted the privilege. *Id.* The court concluded that the privilege belonged to the corporation, the burden of establishing the privilege was on the party asserting it, and because there was

no one left with authority to assert the privilege, the communications had to be produced. *Id.* at *3-4.

¶ 39    As noted by the district court here, the "trending majority view" in other jurisdictions follows the rule that the attorney-client privilege does not survive a corporation's dissolution if there is no one with the authority to assert it. *See Sec. & Exch. Comm'n v. Pence*, No. 17-23744-MC-MORENO, 2017 WL 5624271, at *3 n.3 (S.D. Fla. Nov. 20, 2017) (privilege did not survive corporation's dissolution); *Carrillo Huettel LLP*, 2015 WL 1610282, at *4 (where the business license had expired and the corporate charter was revoked, no privilege remained because the entities had no one to assert it); *TAS Distrib.*, 2009 WL 3255297, at *2 (privilege did not survive corporation's dissolution); *City of Rialto*, 492 F. Supp. 2d at 1200 (corporation dissolved fifty years earlier could not assert the privilege); *Lewis v. United States*, No. 02-2958 B/AN, 2004 WL 3203121, at *4 (W.D. Tenn. Dec. 7, 2004) (defunct entity had no assets to protect). And the reasoning of *Gilliland* has been cited with approval and adopted by other courts. *See Red Vision Sys., Inc.*, 108 A.3d at 65 (collecting cases); *see also* Restatement (Third)

26

of the Law Governing Lawyers § 73 cmt. k (Am. Law Inst. 2000) ("When a corporation or other organization has ceased to have a legal existence such that no person can act in its behalf, ordinarily the attorney-client privilege terminates . . . .").

¶ 40    Fellman urges us to follow a different line of cases upholding the attorney-client privilege post-dissolution. *See City of Rialto*, 492 F. Supp. 2d at 1201 (the general rule that a dissolved corporation cannot assert privilege does not apply to a successor corporation); *Reilly v. Greenwald & Hoffman, LLP*, 127 Cal. Rptr. 3d 317, 324 (Cal. Ct. App. 2011) (absent a waiver from the corporate client, the attorney must assert the privilege); *Travelers of N.J. v. Weisman*, No. L-16977-06, 2011 WL 519920, at *7 (N.J. Super. Ct. App. Div. Feb. 16, 2011) (unpublished opinion) (there was no time limit on the attorney-client privilege); *Randy Int'l Ltd. v. Automatic Compactor Corp.*, 412 N.Y.S.2d 995, 997 (N.Y. Civ. Ct. 1979) (a defunct corporation may still assert attorney-client privilege).  But these cases are distinguishable, because unlike *Gilliland* and this case, they involved ongoing post-dissolution proceedings where a person

associated with those proceedings possessed the authority to invoke or waive the privilege on behalf of the dissolved corporation.

¶ 41    For example, in *Reilly*, the dissolved corporation was going through windup proceedings.  127 Cal. Rptr. 3d at 324.  The court held that "the persons authorized to act on the dissolved corporation's behalf during the windup process — its ongoing management personnel — should be able to assert the privilege." *Id.* (quoting *Favila v. Katten Muchin Rosenman LLP*, 115 Cal. Rptr. 3d 274, 298 (Cal. Ct. App. 2010)).

¶ 42    Likewise, in *Weisman*, the court held that the attorney-client privilege could be invoked by "successors, assigns or trustees in dissolution," even after dissolution.  2011 WL 519920, at *7. However, that case did not involve a dissolved corporation and therefore it did not address situations where there are no successors, assigns, or trustees.

¶ 43    Moreover, in *Randy*, the court stated that the attorney-client privilege survived even if the corporation was no longer functioning or operating because, under New York law, "the privilege may be raised by anyone," even former attorneys.  412 N.Y.S.2d at 997.

28

However, *Randy* was decided before the Supreme Court's decision in *Weintraub*, which held that a corporation's bankruptcy trustee, and not the bankrupt corporation's former directors, holds the privilege. *Weintraub*, 471 U.S. at 353-55.

¶ 44 We reject Fellman's assertion that these cases are contrary to the general rule that the privilege does not survive dissolution and instead conclude that they represent exceptions to the general rule. As recognized by the court in *Red Vision Systems, Inc.*, "the disparate results turn not upon the application of different rules of law, but upon differences in facts." 108 A.3d at 65. "The key fact is whether the corporation is 'dead' as opposed to being in some other state, such as a windup phase, bankruptcy or liquidation, or having merged into or been acquired by a successor." *Id.*

¶ 45 Applying the rule and its exceptions here, we note first that Fellman admitted in the district court that EAGLE-Net has been dissolved, that it no longer represents EAGLE-Net, and that "EAGLE-Net's dissolution in 2017 indicates EAGLE-Net's inability to consent to having" Fellman assert or waive the privilege. No one asserts that EAGLE-Net is still in windup, bankruptcy, or similar

29

proceedings.[3]  Therefore, the district court's finding that EAGLE-Net is a dissolved corporation with no management to act on its behalf is supported by the record.

¶ 46    We next reject Fellman's related contention that, as EAGLE-Net's former general counsel, Fellman possesses the authority to invoke the privilege for EAGLE-Net.  It relies on the exceptions noted above finding that a successor-in-interest, bankruptcy trustee, person managing windup, or statutory liquidator retains the authority to invoke or waive the privilege during post-dissolution proceedings.  Fellman asks us to create a "former general counsel" exception without citing any authority in support.  We decline this request because it is inconsistent with existing precedent precluding former corporate directors and managers from invoking the corporation's attorney-client privilege. *See Weintraub*, 471 U.S. at 343; *Genova*, 72 P.3d at 463.  And, it is inconsistent with the Supreme Court's holding that a former

---

[3] Although Fellman briefly mentions that dissolved corporations can sue and be sued in Colorado after dissolution, it does not develop this argument, so we do not consider it further.  *See Holley v. Huang*, 284 P.3d 81, 87 (Colo. App. 2011) (declining to address undeveloped contentions).

manager cannot assert the privilege as a shield to protect his or her own interest.  *Weintraub*, 471 U.S. at 353-54.[4]  Accordingly, we conclude that Mr. Fellman lacks the authority to invoke the privilege.[5]

## D.     Public Policy Claims

¶ 47     Fellman contends that the district court ignored important public policy reasons supporting the survival of the privilege after the dissolution of an intergovernmental agency.  But Fellman conceded that this argument was first raised in its motion to reconsider saying, "We apologize to the Court, but Defendants'

---

[4] We do not consider Fellman's argument, made for the first time at oral argument, that Mr. Fellman was part of EAGLE-Net's management.  *See Rucker v. Fed. Nat'l Mortg. Ass'n*, 2016 COA 114, ¶ 35 (declining to address argument first raised during oral argument).

[5] We reject Fellman's assertion that Colo. RPC 1.6 requires corporate counsel to invoke the privilege, because the rule permits disclosure when the attorney must "comply with other law or a court order."  Colo. RPC 1.6(b)(8).  Mr. Fellman satisfied his ethical obligation by filing the motion for protective order.  *Cf. Lewis v. United States*, No. 02-2958 B/AN, 2004 WL 3203121, at *1 (W.D. Tenn. Dec. 7, 2004) (ethical obligations satisfied by filing motion to quash); *Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs., L.P.*, 108 A.3d 54, 69 (Pa. Super. Ct. 2017) (although an attorney sought to invoke the privilege, based on his professional requirements, he did not meet the burden to invoke it and therefore attorney-client privilege was inapplicable).

briefs did not fully address broader public policy implications regarding EAGLE-Net's status as a public entity." Therefore, we conclude this argument is waived. *See Landmark Towers Ass'n v. UMB Bank, N.A.*, 2018 COA 100, ¶ 45 (argument raised for the first time in motion for reconsideration was "too late"); *Snipe v. Am. Family Mut. Ins. Co.*, 134 P.3d 556, 557 (Colo. App. 2006) (explaining that because arguments were either not raised in the trial court or raised for the first time in a motion for reconsideration, they were not timely raised and would not be considered on appeal).

### E. Alleged Mishandling of Discovery

¶ 48 Finally, we reject Fellman's argument that the district court mishandled discovery by not conducting a balancing test of the privacy interests at stake or conducting an in camera review of the documents. Because this is beyond the scope of our C.A.R. 4.2 order, we do not address it. *See Adams v. Corrs. Corp. of Am.*, 264 P.3d 640, 644 (Colo. App. 2011) ("Where the appeal would address only whether the trial court had abused its discretion in a discovery matter, interlocutory review is generally not allowed.").

32

## IV. Conclusion

¶ 49    The order is affirmed.

JUDGE WELLING and JUDGE TOW concur.